SEP 18 1990

No. 90-421

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA, ex rel.
MARC RACICOT, Attorney General
for the State of Montana,

Relators,

v.

THE DISTRICT COURT OF THE SEVENTH
JUDICIAL DISTRICT OF THE STATE
OF MONTANA, in and for the County
of Dawson, and the Honorable H.
R. Obert, District Judge,

Respondents.



FILED
SEP 19 1990
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

 For Relators:

  Marc Racicot, Attorney General; Elisabeth S. Baker,
  Assistant Attorney General; Garth Jacobson, Special
  Assistant Attorney General, Helena, Montana

 For Respondents:

  Richard A. Simonton & Lorraine A. Schneider,
  Simonton, Howe & Schneider, Glendive, Montana

Submitted: September 5, 1990

Decided: September 19, 1990

Filed:

_____
Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Richard A. Simonton, after years of estimable public service as County Attorney of Dawson County, was defeated in his bid for re-nomination as a candidate of the Democratic party by Gerald Navratil in the primary election held on June 5, 1990.

On July 23, 1990, Simonton and Lorraine A. Schneider filed a complaint for declaratory relief in the District Court, Seventh Judicial District, Dawson County, alleging that § 13-10-503, MCA, barred Simonton's name from being placed on the ballot as an independent candidate for the office of County Attorney of Dawson County; that the said section denied Lorraine A. Schneider her opportunity to vote for the candidate of her choice at the time of the general election; that the plaintiffs were each denied the right to equal protection and freedom of association under the First and Fourteenth Amendments to the United States Constitution, and Art. II, § 4 of the Montana Constitution; and for declaratory judgment that § 13-10-503, MCA, was unconstitutional.

On August 7, 1990, Simonton presented his petition for nomination as an independent candidate for the office of County Attorney of Dawson County together with the requisite signatures and filing fee to the Dawson County Election Administrator. She rejected his petition on the grounds that § 13-10-503, MCA, required the petition for nomination as an independent candidate to be submitted one week prior to the filing deadline for candidates running for state political office.

2

The defendant in the declaratory judgment action was Patricia Peterson Boje, the Dawson County Election Administrator, who was represented in this case by the office of the Attorney General of the State. On August 10, 1990, the District Court entered findings of fact and conclusions of law, to the effect that Simonton's petition met the requirements of law for placement on the general election ballot in November, 1990, and that § 13-10-503 was unconstitutional and unconstitutional as applied, and further ordered the County Election Administrator to place the name of Simonton on the general election ballot as an independent candidate for Dawson County Attorney, provided that Simonton submitted to the Election Administrator the requisite petition, signatures, oath of office and filing fee on or before August 10, 1990.

On August 22, 1990, the Attorney General, by and through his special assistant, Garth Jacobson, filed herein a petition and memorandum in support thereof for supervisory control or other appropriate relief from the order of the District Court entered on August 10, 1990.

On receipt of the petition of the Attorney General, on August 23, 1990, this Court ordered the District Court and all counsel of record to prepare, serve and file written responses to the application for writ of supervisory control, together with appropriate legal memoranda and exhibits in support thereof on or before September 4, 1990; and that the Court would determine upon receipt of those responses whether oral argument was necessary.

On the 5th day of September, 1990, this Court entered an order in this cause finding there was no need for oral argument, and further stating that the application of the Attorney General for writ of supervisory control was granted. The District Court and presiding judge were ordered to take such steps as may be necessary to reverse the decision of August 10, 1990, to inform the proper election officials, and to remove from the general election ballot of November, 1990, the name of Richard A. Simonton as an independent candidate for the office of County Attorney. We also stated that a full Opinion respecting the matter would issue later. This Opinion is in fulfillment of that statement.

Acceptance of Jurisdiction

Since this cause is an original proceeding in this Court, the first question to be met is whether the petition and the responses thereto present a cause sufficient to move the remedial jurisdiction of this Court.

The Supreme Court of this state is given general supervisory control over all of the state courts. Art. VII, § 2(2), Mont. Const. Our Rule 17(a), Montana Rules of Appellate Procedure, recognizes that the institution of original proceedings in the Supreme Court is sometimes justified by circumstances of an emergency nature, when supervision of a trial court other than by appeal is deemed necessary or proper. We have found that an assumption of original jurisdiction is proper when (1) constitutional issues of major statewide importance are involved; (2) the case involves purely legal questions of statutory and

4

constitutional construction; and (3) urgency and emergency factors exist, making the normal appeal process inadequate. State ex rel. Greeley v. Water Court, State of Montana (1984), 214 Mont. 143, 691 P.2d 833. We will accept declaratory judgment proceedings "where the issues have impact of major importance on a statewide basis, or upon a major segment of the state, and where the purpose of a declaratory judgment proceedings will serve the office of a writ provided by law . . ." Grossman v. State, Department of Natural Resources (1984), 209 Mont. 427, 436, 682 P.2d 1319, 1324.

We find that the criteria for exercising original jurisdiction are present in this case and have accepted jurisdiction for the purpose of determining what relief should be granted.

Grounds Used By District Court To Grant Relief

The District Court found that § 13-10-503(2), MCA, and the procedure for the inclusion of an independent candidate's name on the general election ballot is unconstitutional because it deprived the independent candidate of equal protection of the law afforded by the Fourteenth Amendment, and because it deprived the electorate of an effective right to exercise free speech and the right of association protected by the First Amendment. The District Court found that it was arbitrary and capricious to require independent candidates to file their petitions for office with the Election Administrator prior to the primary filing deadline. The District Court also found no rational basis or compelling state interest for requiring an independent candidate to secure signatures and to submit them in the form of a petition to the Election Administrator

5

at least one week before the primary deadline when the same commitment was not required of major party candidates and when the independent candidate's name does not appear on the primary ballot. The court further said there was no rational basis for requiring independent candidates for offices other than President or Vice-President to submit petitions prior to the primary deadline when the same is not required of Presidential and Vice-Presidential candidates.

The District Court further stated that § 13-10-503(2), MCA, infringed on Simonton's right to an effective and meaningful access to the general election ballot and served only to shield party candidates from independent competition in the general election.

Basis For The Constitutional Issue

The parts of our statutes which are pertinent follow:

**13-10-501.     Petition for nomination by independent candidates.** (1) . . . nominations for public office by an independent candidate . . . may be made by a petition for nomination.

(2)  The petition must contain the same information and the oath of the candidate required for a declaration for nomination.

**13-10-503.     Filing Deadlines.** (1)  A petition for nomination, accompanied by the required filing fee, shall be filed with the same officer with whom other nominations for the office sought are filed. Petitions must be submitted, at least 1 week before the deadline for filing, to the election administrator in the county where the signer resides for verification and certification . . . In the event there are insufficient signatures on the petition, additional signatures may be submitted before the deadline for filing.

(2) . . . each petition shall be filed on or before the filing deadline for the primary election or for the special or general election if no primary election is scheduled.

**13-10-504. Independent or minor party candidates for president or vice-president.** (1) An individual who desires to run for president or vice-president as an independent candidate . . . must file a petition for nomination with the secretary of state 90 days prior to the date of the general election.

(2) The petition must first be submitted, at least 1 week before the deadline for filing, to the election administrator in the county where the signer resides for verification and certification . . .

In addition, § 13-10-327, MCA, provides that if a party candidate dies or withdraws after the primary and before the general election, the affected political party shall appoint someone to replace the candidate. Such appointments to fill vacancies must be made no later than 75 days before the election. Section 13-10-327(2), MCA.

Candidates on a partisan ticket for an elective office must file their declarations for nomination under § 13-10-201(6), MCA, at least 75 days before the date of the primary election.

Insofar as the foregoing statutes affect this case, the primary election was held on June 5, 1990. The final filing date was March 22, 1990. Independent candidates were required to submit their petitions for candidacy by March 15, 1990, to be final by March 22, 1990. Candidates for nomination by a political party for an elective office were required to file their declarations of nomination by March 22, 1990. Since 1990 was not a presidential election year, there were no contests in Montana for the office of President or Vice-President of the United States.

The District Court did not quarrel with the requirement that independent candidates submit their petitions to the election administrator prior to the final filing date. Rather it contended that the statute violates the Fourteenth Amendment's Equal Protection Clause in two requirements: (1) the required filing before the primary deadline when the independent's name did not appear on the primary ballot; and, (2) requiring the independent to secure sufficient signatures on a petition and submitting it at least one week before the party candidates must express their intentions. (Under § 13-10-502(2), MCA, the petition of an independent candidate to be placed on the ballot must be signed by electors residing within the county, and the number must be 5% or more of the total vote cast for the successful candidate for the same office at the last general election.)

Disposition

Simonton's Fourteenth Amendment arguments compare the differences in final filing dates between Presidential and Vice-Presidential candidates, candidates for major party nomination, and candidates who are independents or minor party candidates. He argues that there is no compelling reason for the differences in filing requirements and that such requirements serve only to inhibit minor parties and independent candidates from running for election and they perpetuate the two-party system. He further points out that until 1973, independent candidates could file after the primary election as candidates on the general election ballot and no chaos or confusion resulted thereby.

8

Simonton relies primarily upon two U.S. Supreme Court decisions, Williams v. Rhodes (1968), 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24, and Anderson v. Celebrezze (1983), 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547.

Williams involved a challenge to Ohio's election laws which required a person other than a nominee of a major political party to secure signatures of 15 percent of the qualified electors on a petition and the filing of that petition earlier than for other candidates. The case involved candidates of a minor party seeking to secure a place on the Ohio ballot for President and Vice-President. In Williams, the U.S. Supreme Court found that Ohio's election procedures were burdensome and prevented the minor parties from ever getting on the ballot and that reliance on write-ins was an insufficient remedy when compared to a printed appearance on the ballot.

In Anderson, the U.S. Supreme Court again examined Ohio law and found its primary deadlines, when applied to independent candidates and minor candidates, to be unconstitutional. There, Anderson, running for president of the United States, did not tender his petition until May 16, when the filing deadline was March 20, and the election administrator refused the petition. The Supreme Court held that Ohio's early filing deadline placed an unconstitutional burden on the voting and associational rights of Anderson supporters and that the requirement that he must gather 5,000 signatures on a number of petitions would discourage

independent candidates who otherwise would have to decide well in advance of the March filing deadline whether to run.

Simonton also relies on Bradley v. Mandel (D. Md. 1978), 449 F.Supp. 983, examining a Maryland statute and resulting in the same kind of decision, and other cases.

Simonton's and Schneider's arguments respecting the First Amendment follow along the same lines. They contend that the state must have a compelling interest in order to restrict independent's rights; that such election laws are the product of legislators elected by major parties who have a direct interest in the failure of independent candidacies; and that such filing limitations burden the rights of individuals to associate for the advancement of political beliefs and prevent qualified voters from casting their votes effectively. They also contend that being independent is evidence of a state of mind and that the statute which prevents independent persons from fielding an opposition candidate to partisan candidates after a primary is in effect a prior restraint.

Simonton and Schneider raise constitutional issues of considerable complexity and depth, but in this case they are not the right parties to raise such issues. Simonton does not come before the Court as a truly independent candidate. He is a partisan candidate who ran for re-election for the office of County Attorney on the Democratic ticket and failed to prevail in the primary election. When he filed his declaration for nomination as a Democratic candidate, that declaration became conclusive evidence that he was a candidate for nomination by his party. Section 13-

10-201(4), MCA. He has not been denied access by law to the general election ballot, but by the will of the electors in the party he sought to represent. He made no attempt to file as an independent candidate prior to the filing date and the laws requiring petitions and signatures for nomination as an independent candidate did not prevent him from seeking office. He chose a method of obtaining office that was permitted by law and cannot now complain about the operation of law that would apply to other possible candidates than himself.

The same situation exists with respect to Lorraine A. Schneider. The evidence in the case is that she voted in the primary election, having signed the register of voters at the primary election in Dawson County which certifies that she received primary election ballots. We do not know how she voted but we do know she had an opportunity to vote for the candidate of her choice, Mr. Simonton. Again, no operation of the laws relating to independent candidates prevented her from voting for her candidate as a representative of the party ticket under which he chose to run, and in which she was given the right to choose to vote.

This position of lack of standing of either Simonton or Schneider to raise the constitutional issues in this case is strongly urged upon us by amicus curiae, Montana Association of Counties, which filed with us an amicus brief. Essentially, the Association argues that neither Simonton nor Schneider have been disadvantaged in the sense that he was truly an independent who was

prevented from appearing on the ballot by virtue of the filing requirements.

The District Court, recognizing that Simonton had been a partisan candidate for the same office, gave no heed to this factor because, the court said, Montana did not have a "sore loser" statute that would prevent defeated partisan candidates from filing as an independent for the same office. Until the enactment of § 13-10-503, MCA, in 1973, defeated partisan candidates often re-entered the fray as independent candidates at the general election. The adoption by the legislature of § 13-10-503, MCA, effectively stopped this procedure. While the statute might be considered in some respects as a "sore loser" provision, we do not rely on it for that effect. It is far more to the point here that Simonton and Schneider each exercised full candidacy and electoral rights as partisans, and now seek the advantages of law preserved to independents in election matters. When Simonton filed for re-election as a partisan, he did so under the election laws which "burdened" independent candidates for the same office. He cannot now complain of the unconstitutional burdens on others which, if Simonton is correct, kept independent candidates out of the race. It is old but settled law that to raise questions of the unconstitutional discriminatory effect of statutes, the party complaining must belong to the class discriminated against. State v. State Bank of Moore (1931), 90 Mont. 539, 552, 4 P.2d 717, 720. One cannot abide by the provisions of laws which work in one's favor, and then attack their constitutionality when they work to

lowed the analysis and holding of *Kemp v. Bechtel Constr. Co.* and concluded that trenching is not an inherently dangerous activity. *Micheletto*, at 993. In a similar manner, in the present case, the use of the bucket on the High Ranger bucket lift was dangerous to the plaintiff because a safety belt was not used. Had this standard precaution been used, there would have been no extraordinary risk as the result of the use of the High Ranger bucket lift. In this case, the failure to attach the safety belt in the use of the equipment is comparable to the failure to use trench box or other safety precautions in both *Kemp v. Bechtel Constr. Co.* and *Micheletto.* We conclude that under the facts in the present case, the work was not inherently dangerous.

We conclude that plaintiff failed to present any facts which would create a genuine issue of material fact in regard to the liability of Big Horn. Accordingly, we affirm the District Court's grant of summary judgment in favor of Big Horn.

Affirmed.

TURNAGE, C.J., and HARRISON, BARZ and GULBRANDSON*, JJ., concur.

McDONOUGH, J., concurs in the result of the foregoing opinion.

HUNT, Justice, concurring in part and dissenting in part:

I concur with the portions of the Majority Opinion dealing with nondelegable duties based on contract and control. However, I dissent from the Majority's analysis regarding inherently dangerous activity.

The Majority holds that the use of an aerial lift bucket is not an inherently dangerous activity because standard precautions may be implemented to prevent the risks involved in using the bucket. However, for the reasons I pointed out in my dissents to *Kemp v. Bechtel Constr. Co.*, 221 Mont. 519, 528–34, 720 P.2d 270, 276–80

*L.C. Gulbrandson, J., retired sitting for

(1986) and *Micheletto v. State*, 998–999 (Mont.1990), I disagree... ty to lessen the dangers normally inherently dangerous activity th... use of ordinary safeguards... change the basic character of the... If the nature of the activity is in... dangerous, it remains inherently da... whether or not standard precauti... be taken to lessen the dangers in... the activity.

Because the use of the aerial lift... constituted an inherently dangerous... ty, defendant, as employer of the con... ing firm, retained a nondelegable du... furnish plaintiff with a safe place to w... Restatement (Second) of Torts §§ 415... 427 (1977). Plaintiff, in his complaint... in his deposition, maintained that defen... failed to provide a safe place to wor... cause the aerial lift bucket was... equipped with standard safety devices... which he could attach his safety belt... so alleging and testifying, plaintiff rai... material question of fact. He should... allowed to take his case to the jury...

I would reverse the District Court on th... issue.



STATE of Montana, ex rel. Marc RACI-COT, Attorney General for the State of Montana, Relators,

v.

The DISTRICT COURT OF the SEVENTH JUDICIAL DISTRICT OF the STATE OF MONTANA, In and For the COUNTY OF DAWSON, and the Honorable H. R. Obert, District Judge, Respondents.

No. 90-421.

Supreme Court of Montana.

Submitted Sept. 5, 1990.

Decided Sept. 19, 1990.

Partisan candidate who lost bid for renomination as county attorney in primary

Sheehy, J.

March 22, 1990. Independent candidates were required to submit their petitions for candidacy by March 15, 1990, to be final by March 22, 1990. Candidates for nomination by a political party for an elective office were required to file their declarations of nomination by March 22, 1990. Since 1990 was not a presidential election year, there were no contests in Montana for the office of President or Vice–President of the United States.

The District Court did not quarrel with the requirement that independent candidates submit their petitions to the election administrator prior to the final filing date. Rather it contended that the statute violates the Fourteenth Amendment's Equal Protection Clause in two requirements: (1) the required filing before the primary deadline when the independent's name did not appear on the primary ballot; and, (2) requiring the independent to secure sufficient signatures on a petition and submitting it at least one week before the party candidates must express their intentions. (Under § 13–10–502(2), MCA, the petition of an independent candidate to be placed on the ballot must be signed by electors residing within the county, and the number must be 5% or more of the total vote cast for the successful candidate for the same office at the last general election.)

## Disposition

Simonton's Fourteenth Amendment arguments compare the differences in final filing dates between Presidential and Vice-Presidential candidates, candidates for major party nomination, and candidates who are independents or minor party candidates. He argues that there is no compelling reason for the differences in filing requirements and that such requirements serve only to inhibit minor parties and independent candidates from running for election and they perpetuate the two-party system. He further points out that until 1973, independent candidates could file after the primary election as candidates on the general election ballot and no chaos or confusion resulted thereby.



Simonton relies primarily upon two Supreme Court decisions, *William Rhodes* (1968), 393 U.S. 23, 89 S.Ct. L.Ed.2d 24, and *Anderson v. Celeb* (1983), 460 U.S. 780, 103 S.Ct. 156 L.Ed.2d 547.

*Williams* involved a challenge to O. election laws which required a person of than a nominee of a major political party secure signatures of 15 percent of the q... ified electors on a petition and the filing that petition earlier than for other ca... dates. The case involved candidates of minor party seeking to secure a place the Ohio ballot for President and V... President. In *Williams*, the U.S. Supre... Court found that Ohio's election procedu... were burdensome and prevented the min... parties from ever getting on the ballot an... that reliance on write-ins was an insuf... cient remedy when compared to a prim... appearance on the ballot.

In *Anderson*, the U.S. Supreme Court again examined Ohio law and found its primary deadlines, when applied to independent candidates and minor candidates, to be unconstitutional. There, Anderson, running for president of the United States, did not tender his petition until May 16, when the filing deadline was March 20, and the election administrator refused the petition. The Supreme Court held that Ohio's early filing deadline placed an unconstitutional burden on the voting and associational rights of Anderson supporters and that the requirement that he must gather 5,000 signatures on a number of petitions would discourage independent candidates who otherwise would have to decide well in advance of the March filing deadline whether to run.

Simonton also relies on *Bradley v. Mandel* (D.Md.1978), 449 F.Supp. 983, examining a Maryland statute and resulting in the same kind of decision, and other cases.

Simonton's and Schneider's arguments respecting the First Amendment follow along the same lines. They contend that the state must have a compelling interest in order to restrict independent's rights; that such election laws are the product of legislators elected by major parties who



one's disfavor. State ex rel. Krutzfeldt v. Thirteenth Judicial District Court (1973), 163 Mont. 164, 515 P.2d 1312.

Schneider's case presents First Amendment questions that ordinarily this Court would examine and decide, since she is an elector claiming associational and free speech rights. However, her case is tied absolutely to her contention that she has a right to vote for Simonton as an independent in the general election of 1990. Since he has no right to such candidacy, her claims must fall with his.

On the basis therefore that neither Simonton nor Schneider were disadvantaged by the operation of the filing requirements for independent candidates, we decline to decide the constitutional issues otherwise presented.

We hold, therefore, that the Order of the District Court must be reversed and that the name of Richard A. Simonton is not entitled to be placed on the November, 1990, general election ballot as a candidate for County Attorney of Dawson County.

Accordingly, IT IS ORDERED:

1. The Order of August 10, 1990, of the District Court, Seventh Judicial District, Dawson County, in its cause no. DV 90-058 be and same is hereby REVERSED.

2. The Order and directions therein of this Court in this cause dated August 23, 1990, be and the same are hereby confirmed. A copy of such Order is attached hereto as Addendum 1.

3. The Petition of the Attorney General in this cause as relator be and the same is hereby GRANTED. This Opinion, together

13

with our Order of August 23, 1990 in this cause, shall be and perform the office of a writ of supervisory control issued out of this Court without further order of this Court.

4. The Clerk of this Court is directed to mail copies of this Opinion to counsel of record for the parties, to the District Court of Dawson County and its presiding judge, to the Election Administrator of Dawson County, Montana, and to the Clerk of Court of Dawson County.

DATED this 19th day of September, 1990.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. Jeffrey Sherlock,
sitting for Justice
R. C. McDonough

14

I respectfully dissent from the foregoing majority opinion. In my opinion Mr Simonton ceased to be the Democratic party candidate following the primary election. Thereafter he sought to become an independent candidate.

It appears to me that the statute in question discriminates against anyone seeking to run for election as an independent candidate, and no compelling interest of the state to justify such discrimination is apparent.

LeRoy L. McKinnon
District Judge, Ret.,
Sitting for Justice
William E. Hunt, Sr.

15

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 90-421

STATE OF MONTANA, ex rel. MARC )
RACICOT, Attorney General of )
the State of Montana, )
　　　　　　　　　　　　　　　　　 )
　　　　　　Relator, )
　　　　　　　　　　　　　　　　　 )
　　v. )　　O R D E R
　　　　　　　　　　　　　　　　　 )
THE DISTRICT COURT OF THE )
SEVENTH JUDICIAL DISTRICT OF )
THE STATE OF MONTANA, IN AND )
FOR THE COUNTY OF DAWSON, and )
the HONORABLE H. R. OBERT, )
District Judge, )
　　　　　　　　　　　　　　　　　 )
　　　　　　Respondents. )

'90 SEP 5 PM 4 28 FILED ED SMITH, CLERK MONTANA SUPREME COURT

Relator, Marc Racicot, Attorney General, filed in this cause a petition for writ of supervisory control seeking review of the order of the District Court of the Seventh Judicial District, Dawson County, in its Cause DV 90-058, dated August 10, 1990, permitting the name of Richard A. Simonton to be placed on the upcoming general election ballot as an independent candidate for Dawson County Attorney.

Upon receipt of the petition, this Court entered an order on August 23, 1990, requesting the respondents and all counsel of record in the said cause to prepare, file and serve written responses to the application for writ of supervisory control together with appropriate memoranda and exhibits. The Court in that order also reserved the question whether oral argument would be necessary.

Responses having been received and briefs of the parties and from amicus curiae, and the Court being advised in the premises,

IT IS HEREBY ORDERED:

1.　The Court finds no need for oral argument in this cause.

2.　The application for writ of supervisory control is GRANTED.

1

3. The District Court of the Seventh Judicial District, Dawson County, and the presiding judge, Honorable H. R. Obert, are each hereby ordered to take such steps as may be necessary to reverse its decision of August 10, 1990, to inform the proper election officials, and to remove from the general election ballot of November 1990 the name of Richard A. Simonton as an independent candidate for the office of county attorney.

4. A full opinion respecting this case will issue later.

5. The Clerk of this Court shall give immediate telephonic notice of this order to counsel of record, to the presiding judge of said district court, to the clerk and recorder of Dawson County, Montana, and shall mail copies hereof by ordinary mail forthwith to said persons.

DATED this 5th day of September, 1990.

_____
Chief Justice

_____
_____
_____
Justices

_____
Hon. Jeffrey M. Sherlock, District Judge, sitting in place of Justice R. C. McDonough

Hon. LeRoy L. McKinnon, Retired District Judge:

I dissent to the foregoing order.

_____
Hon. LeRoy L. McKinnon, Retired District Judge, sitting in place of Justice William E. Hunt, Sr.

2