No. 96-023

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ROBERTA PLUMB and MARTIN PLUMB,

Petitioners,

v.

THE FOURTH JUDICIAL DISTRICT COURT,
MISSOULA COUNTY, MONTANA,

Respondent.

FILED

NOV 22 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Petitioners:

Gregory O. Morgan (argued) and Robert Cameron
(argued), Gregory O. Morgan, P.C., Bozeman, Montana

For Respondent:

Dan L. Spoon, Reep, Spoon & Gordon, Missoula,
Montana; and John Alke (argued), Hughes, Kellner,
Sullivan & Alke, Helena, Montana
(for Defendant Southgate Mall)

For Amici Curiae:

Richard F. Cebull (argued) and Tiffany B.
Lonnevik, Brown, Gerbase, Cebull, Fulton,
Harman & Ross, Billings, Montana
(for Dr. Timothy Adams)

J. Daniel Hoven, Browning, Kaleczyc,
Berry & Hoven, Helena, Montana
(for Montana Municipal Insurance Authority)

Jerome T. Loendorf, Harrison, Loendorf,
Poston & Duncan, Helena, Montana
(for Montana Medical Association)

R. Stephen Browning, Browning, Kaleczyc,
Berry & Hoven, Helena, Montana
(for Montana Hospital Association)

Randy J. Cox, Boone, Karlberg & Haddon,
Missoula, Montana; and T. Thomas Singer, Moulton,
Bellingham, Longo & Mather, Billings, Montana
(for Montana Defense Trial Lawyers, Inc.)

Robert L. Sterup, Dorsey & Whitney,
Billings, Montana
(for CBI Services, Inc.)

William A. Rossbach and Elizabeth A. Brennan,
Rossbach & Whiston, Missoula, Montana
(for Montana Trial Lawyers Association)

Heard: May 30, 1996

Submitted: May 31, 1996

Decided: November 22, 1996

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

> I have no doubt that if the records of the time of
> that ancient and apparently earliest of lawgivers,
> Hammurabi, could be completely restored, we should learn
> that in the third millennium before Christ men were
> complaining about the inefficiency of legal procedure,
> and I fancy that if any of you are destined in the year
> 7000 A.D. to revisit the glimpses of the moon to examine
> and write a monograph for the celestial choirs upon the
> condition of human law courts, you will be obliged to
> report to some Seraphic Commission that mankind still
> exhibits the same discontentment with its methods of
> adjusting human differences that you know today. I must
> therefore ask you to believe that in the course of a half
> hour I do not hope to lay my finger on the cure for a
> condition which is probably so inherent in our human
> imperfections as to be persistent as long as the need for
> litigation itself endures. We shall, I fear, be scarcely
> satisfied with our settlement of disputes until we have
> so purged and purified our natures as to bring down the
> dove of domestic peace to be a permanent sojourner amid
> the haunts of homo sapiens.

United States District Judge Learned Hand, The Deficiencies of Trials to Reach the Heart of the Matter, a 1921 lecture before The Association of the Bar of the City of New York, *reprinted in* 31 Int'l Soc'y of Barristers Q. 309 (1996).

Nowhere is our society's "discontentment with [our] methods of adjusting human differences" more apparent than in the periodic enactment, interpretation, and amendment of § 27-1-703, MCA, which relates to apportionment of liability for damages. What follows is this Court's most recent effort to blend due consideration for the Legislature's responsibility to establish social policy with the judiciary's responsibility to assure that those efforts are pursued within constitutional parameters.

The plaintiffs, Roberta Plumb and Martin Plumb, brought this action in the District Court for the Fourth Judicial District in

Missoula County to recover damages from the defendant, Southgate Mall Associates, for injuries allegedly sustained by Roberta when she slipped and fell while on the Mall's premises due to the Mall's alleged negligent maintenance of those premises. Over plaintiffs' objection, the Mall was allowed to file an amended answer in which it alleged that plaintiffs' damages were caused or contributed to by the negligent treatment and care provided by Roberta's treating physician, and that its liability should be reduced accordingly based on § 27-1-703(6), MCA (1995). The Plumbs petitioned this Court for supervisory control based on our decision in *Newville v. State Department of Family Services* (1994), 267 Mont. 237, 883 P.2d 793. We granted supervisory control, and now, after consideration of the arguments by both parties and numerous *amici curiae*, we reverse the order of the District Court which allowed the Mall to assert as an affirmative defense that its liability should be diminished due to the fault of an unnamed third party.

We have been asked to decide the following issues:

1. Are the facts and issues presented in this case appropriate for resolution by supervisory control?

2. Does the opportunity for a defendant to reduce its liability by asserting as an affirmative defense that plaintiffs' damages have been caused or contributed to by unnamed third parties pursuant to § 27-1-703(6), MCA (1995), violate principles of substantive due process as guaranteed by the federal and state constitutions?

4

## PROCEDURAL BACKGROUND

In their complaint, Roberta and Martin Plumb allege that on September 13, 1992, Roberta entered the Southgate Mall in Missoula, and just inside the entrance, slipped and fell after stepping on a film of water which had not been visible on the highly polished floor. The Plumbs allege that Roberta's fall was caused by the Mall's negligent failure to keep its premises in a reasonably safe condition and its negligent failure to warn her that the floor was dangerously slippery. They allege that as a result of her fall, Roberta injured her lower leg, and that because of that injury, she has undergone a series of complicated surgical procedures and other complications, following which her ability to walk is substantially impaired. Both Roberta and Martin sought damages from the Mall for their losses related to Roberta's injuries.

For its answer, the Mall admitted that it owned and controlled the property in question, but denied the other material allegations of the complaint and asserted various affirmative defenses.

Deadlines for the completion of discovery and amendments to pleadings were established. However, four and one-half months after its answer was filed, the Mall moved to amend the scheduling order, based on Senate Bill 212 which amended § 27-1-703, MCA (1987), by permitting the assertion of a "nonparty defense," and providing certain procedural requirements in apparent response to our decision in *Newville*. That Bill was signed by the Governor on April 5, 1995, and became effective on that date. By its terms,

5

the Bill was applicable to all claims which had not yet been reduced to final judgment.

The Mall's motion to amend the scheduling order was granted. It then filed a motion to amend its answer pursuant to § 27-1-703(6), MCA (1995), to allege as a seventh affirmative defense that the Plumbs' injuries were caused, in whole or in part, by a third party--specifically, Roberta's treating physician, Dr. Timothy J. Adams. As part of its proposed seventh affirmative defense, the Mall alleged that since Dr. Adams' conduct contributed to or caused Roberta's injuries, it is entitled to a proportionate reduction in any damages for which it might be liable pursuant to the amended statute.

The Plumbs opposed the Mall's motion to amend for various reasons. Significant to our decision is their contention that § 27-1-703(6), MCA (1995), violates their rights and Dr. Adams' right to substantive due process pursuant to our decision in *Newville*.

Over the Plumbs' objection, the District Court granted the Mall's motion to amend its answer, and allowed the Mall to allege as a seventh affirmative defense that Dr. Timothy Adams contributed to or caused Roberta's injuries and that its own liability should be reduced or eliminated accordingly.

In order to avoid the time and expense of proceeding through trial preparation and possible trial without knowing the proper issues to be decided or the proper parties to be named, and blamed

6

or defended, the Plumbs petitioned this Court for supervisory control.

## ISSUE 1

Are the facts and issues presented in this case appropriate for resolution by supervisory control?

The Plumbs contend that supervisory control is appropriate because this case involves a constitutional issue of major state-wide importance, there are no factual disputes related to that issue, and the normal appeal process is inadequate.

The Mall contends that supervisory control is not appropriate because factual issues underlie its "nonparty defense," and that those issues should first be resolved by the District Court.

We have, essentially, two lines of authority which set forth the standard for when supervisory control should be exercised. However, those standards are not consistent.

The most oft-cited standard is that "supervisory control is appropriate where the district court is proceeding under a mistake of law, and in so doing is causing a gross injustice." *See, e.g., Potter v. District Court* (1994), 266 Mont. 384, 880 P.2d 1319; *State ex rel. Torres v. District Court* (1994), 265 Mont. 445, 877 P.2d 1008; *State ex rel. Forsyth v. District Court* (1985), 216 Mont. 480, 701 P.2d 1346; *State ex rel. Fitzgerald v. District Court* (1985), 217 Mont. 106, 703 P.2d 148. This standard has its roots in the turn-of-the-century case of *State ex rel. Whiteside v. District Court* (1900), 24 Mont. 539, 63 P. 395, in which this Court explained:

7

> [Supervisory control] has its own appropriate functions, and, without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate. Under such circumstances, the case being exigent, no relief could be granted under the other powers of this Court, and a denial of a speedy remedy would be tantamount to a denial of justice.

*Whiteside*, 24 Mont. at 562-63, 63 P. at 400.

A second line of authorities follows our decision in *State ex rel. Racicot v. District Court* (1990), 244 Mont. 521, 798 P.2d 1004, where we held that assumption of original jurisdiction by supervisory control is proper when:

> (1) constitutional issues of major statewide importance are involved;

> (2) the case involves purely legal questions of statutory and constitutional construction; and

> (3) urgency and emergency factors exist, making the normal appeal process inadequate.

*Racicot*, 244 Mont. at 524, 798 P.2d at 1006.

While it is correct that prior to *Racicot* we had exercised supervisory control under all three circumstances set forth in the *Racicot* test, that decision has subsequently been interpreted to mean that all three circumstances must be present before supervisory control will be accepted. The three-part *Racicot* test has been followed in *Craig v. District Court* (1993), 262 Mont. 201, 202, 864 P.2d 791, 792-93, *State ex rel. Nelson v. District Court* (1993), 262 Mont. 70, 72, 863

8

P.2d 1027, 1028, and *Associated Press v. State* (1991), 250 Mont. 299, 301, 820 P.2d 421, 422.

We conclude that while the issues in this case satisfy either line of authorities, there will be circumstances which are appropriate for the exercise of supervisory control pursuant to Article VII, Section 2(2), of the Montana Constitution, and Rule 17(a), M.R.App.P., which do not satisfy the three-part test. Therefore, to the extent that the *Racicot* decision suggests that all three elements must be established before supervisory control is exercised, and to the extent that subsequent decisions have applied the test in that fashion, they are reversed.

An example of why the three-part test may not be appropriate in every case is our decision in *State ex rel. Deere & Co. v. District Court* (1986), 224 Mont. 384, 730 P.2d 396. In *Deere*, we exercised supervisory control to decide another procedural issue presented by § 27-1-703, MCA (1981). Even though that case did not present a constitutional issue, we accepted jurisdiction in the interest of judicial economy. We stated:

> We turn now to the other issues raised by the parties in the cause. Wade's Backhoe contended that this cause does not present a sufficient reason for the issuance of a writ of supervisory control or other appropriate writ. In view of the importance of the issue presented here such a contention is really a subissue. If we had decided to deny the application for writ without comment on the grounds that the matter could later be looked at by us on appeal, we would be foregoing an important opportunity for the instruction of the courts and counsel as to our interpretation of amended Section 27-1-703, MCA, under the facts presented. In matters involving supervisory control, this Court has followed the practice of proceeding on a case-by-case basis though we are careful not to substitute the power

9

of supervisory control for an appeal. *State ex rel. Reid v. District Court* (1953), 126 Mont. 489, 255 P.2d 693. Justice and judicial economy is served when, faced with a record that shows the relator is deprived of a fundamental right, we resolve the issue in favor of the relator and assume jurisdiction. *State ex rel. Coburn v. Bennett* (1982), 202 Mont. 20, 655 P.2d 502. We have also said that when a cause in the District Court is mired in procedural entanglements and an appeal is not an adequate remedy, we will issue a writ of supervisory control. *State ex rel. Leavitt v. District Court* (1977), 172 Mont. 12, 560 P.2d 517. We determine that this· is an appropriate case for supervisory control and have therefore assumed jurisdiction.

*Deere*, 224 Mont. at 399, 730 P.2d at 406.

We conclude that the constitutionality of § 27-1-703(6), MCA (1995), is likewise an appropriate issue to decide by supervisory control. If, as we later conclude, the District Court is proceeding based on a mistake of law when it permits the Mall to blame an unnamed third party for Roberta's injuries, then the course of discovery will be affected, the cost of preparation and trial will be affected, settlement by the parties will be rendered more difficult, and the value of any verdict will be questionable, meaning additional time and expense for a resolution of this issue by appeal and the inevitable subsequent litigation. Therefore, we conclude that any remedy available to the Plumbs by appeal is inadequate, and that the denial of a speedy remedy by supervisory control would be a denial of justice.

### ISSUE 2

Does the opportunity for a defendant to reduce its liability by asserting as an affirmative defense that plaintiffs' damages have been caused or contributed to by unnamed third parties pursuant to § 27-1-703(6), MCA (1995), violate principles of

10

substantive due process as guaranteed by the federal and state constitutions?

When the District Court granted the Mall's motion to amend its answer and assert an affirmative defense based on its allegation that the alleged negligence of an unnamed third party should serve to reduce its liability, the District Court's order was tantamount to a determination that the 1995 amendments to § 27-1-703, MCA, satisfied this Court's constitutional concerns about the assignment of fault to unnamed and unrepresented third persons. That conclusion was a conclusion of law. We review conclusions of law to determine whether they are correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

In *Montana Milk Control Board v. Rehberg* (1962), 141 Mont. 149, 376 P.2d 508, we borrowed the test of substantive due process set forth by the U.S. Supreme Court in *Nebbia v. New York* (1934), 291 U.S. 502, 54 S. Ct. 505, 78 L. Ed. 940. We held that:

> Similarly, we think Nebbia v. New York, supra, properly sets forth the test we must use to determine whether or not the Montana Milk Control Act denies due process of law to the defendant Rehberg. In that case, the United States Supreme Court said: *"(T)he guaranty of due process * * * demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained.* It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts." (Emphasis added.) Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469 (1934).

*Milk Control Board*, 141 Mont. at 155, 376 P.2d at 512.

We have used variations of that standard since. *See Newville v. State Dep't of Family Servs.* (1994), 267 Mont. 237, 883 P.2d 793; *Town & Country Estates Ass'n v. Slater* (1987), 227 Mont. 489, 740 P.2d 668; *Raisler v. Burlington Northern R.R. Co.* (1985), 219 Mont. 254, 717 P.2d 535; *Linder v. Smith* (1981), 193 Mont. 20, 629 P.2d 1187.

However, in essence, substantive due process analysis requires that we decide (1) whether the legislation in question is related to a legitimate governmental concern, and (2) that the means chosen by the Legislature to accomplish its objective are reasonably related to the result sought to be attained. Since we have already held in *Newville* that apportionment of liability among those responsible for a person's damage is a legitimate government concern (*Newville*, 267 Mont. at 254, 883 P.2d at 803), our concern in this case is whether the 1995 amendments to § 27-1-703, MCA, are rationally related to the accomplishment of that objective. To address that issue, we must first set forth the legislative and decisional history which has given rise to this issue.

The history of § 27-1-703, MCA (1981), is thoroughly discussed in *Deere*. That discussion is continued, as it relates to the 1987 amendment to that statute, in *Newville*. We will not attempt to repeat all that is said therein, but merely offer the following summary to put our discussion of the 1995 amendments in context.

In 1977, the Legislature adopted a right of contribution between or among joint tort-feasors. Section 58-607.2, RCM (1947). After recodification, that section became what is now § 27-1-703,

12

MCA. However, in *Consolidated Freightways Corporation of Delaware v. Osier* (1979), 185 Mont. 439, 605 P.2d 1076, we held that the contribution statute did not apply in a situation where the plaintiff was not contributorily negligent, and that the language of the statute did not provide for contribution from anyone other than defendants against whom the plaintiff had recovered judgment. For that reason, we held that contribution could not be sought, even pursuant to third-party practice provided for in Rule 14, M.R.Civ.P., from persons who had not been named as defendants by the plaintiff. *Consolidated Freightways*, 185 Mont. at 444, 605 P.2d at 1079.

In response to the *Consolidated Freightways* decision, the Legislature, in 1981, amended § 27-1-703, MCA (1977), to provide for contribution, even in those situations where contributory negligence had not been alleged, and to allow the defendant to join unnamed joint tort-feasors for the purpose of seeking contribution. However, we held in *Deere* that since the amended statute provided for contribution "proportional to the negligence of the parties against whom recovery is allowed," and since recovery would not be allowed from a person who had settled with the plaintiff, contribution could not be had from a defendant who had previously settled with the plaintiff. *Deere*, 224 Mont. at 393, 730 P.2d at 402.

In response to *Deere*, § 27-1-703, MCA (1981), was again amended by the Legislature in 1987. The 1987 amendment eliminated the obligation of joint and several liability for defendants who are

13

found to be fifty percent or less at fault for a plaintiff's injuries, and permitted the trier of fact to apportion fault among not only the parties to the lawsuit, but also nonparties, including "persons released from liability by the claimant, persons immune from liability to the claimant, and any other persons who have a defense against the claimant." Section 27-1-703, MCA (1987). This so-called "nonparty" or "empty chair" defense was the subject of our attention in *Newville*.

In *Newville*, the plaintiffs were guardians ad litem for a minor child who had been placed in the custody of the State Department of Family Services, which had then placed her in a series of foster homes, including the home of Dennis and Martha Kuipers. Edna Goodwin was a counselor from the Department who was involved in the child's placement with Dennis and Martha Kuipers. After the minor child was severely abused and permanently injured by Dennis Kuipers, both the Department and Edna Goodwin were sued for their inadequate investigation and supervision of the foster home placement. The plaintiffs settled with Edna Goodwin prior to trial and proceeded to trial against Martha Kuipers and the Department. However, the jury was provided with a verdict which allowed it to assign a percentage of responsibility for the child's injuries to Martha Kuipers, the Department, or Edna Goodwin. The jury did apportion thirty-five percent of the total negligence to Edna Goodwin.

On appeal, the plaintiffs in *Newville* challenged the constitutionality of a procedure which permitted their recovery to

14

be reduced based on the assignment of liability to a party who had not been present nor represented during the course of trial. We held, first of all, that plaintiffs had standing to assert not only their own constitutional rights, but also substantive due process rights of the unnamed third parties because by the denial of that party's procedural rights, the plaintiffs suffered potential economic loss. We held that that loss could potentially result from diminution of the plaintiffs' recovery by reducing the percentage of the defendants' negligence. *Newville*, 267 Mont. at 246-47, 883 P.2d at 799.

We then discussed the 1987 amendments to § 27-1-703, MCA (1981), and concluded that the purpose of those amendments was to apportion responsibility for a person's damages among all those who might have contributed as a cause to those damages in order that those defendants named by a plaintiff could avoid paying a judgment disproportionate to their respective degree of fault. *Newville*, 267 Mont. at 247-49, 883 P.2d at 799-800. After discussing the requirements of substantive due process, we held, however, that there were no procedural safeguards provided for in § 27-1-703(4), MCA (1987), to assure that the jury's apportionment of liability was an accurate reflection of the various parties' comparative fault. We stated:

> We conclude that § 27-1-703(4), MCA (1987), unreasonably mandates an allocation of percentages of negligence to nonparties without any kind of procedural safeguard. As a result, plaintiffs may not receive a fair adjudication of the merits of their claims. It imposes a burden upon plaintiffs to anticipate defendants' attempts to apportion blame up to the time of submission of the verdict form to the jury. Such an

15

> apportionment is clearly unreasonable as to plaintiffs, and can also unreasonably affect defendants and nonparties.

*Newville*, 267 Mont. at 252, 883 P.2d at 802. In other words, we held that both the plaintiffs' rights to substantive due process, and the rights of the nonparty to whom fault was assigned, had been violated.

In dicta which followed our conclusion, but which was not the basis for our conclusion, we noted that in other states, where a defendant is allowed to blame nonparties, procedural requirements had been provided which were not provided by Montana's statute. Those procedural requirements included (1) notice to the plaintiff and the nonparty of the defendant's intention to assign blame to a nonparty; (2) a limitation of time within which notice of a nonparty claim has to be made; and (3) a requirement that it is the defendant's burden to prove that a nonparty contributed as a cause to the plaintiff's injuries and would be partially liable.

Based on our conclusion, we struck from that part of § 27-1-703(4), MCA (1987), the language which allowed assignment of liability to "persons released from liability by the claimant, persons immune from liability to the claimant, and any other persons who have a defense against the claimant." *Newville*, 267 Mont. at 255, 883 P.2d at 803. We held, however, that since the unconstitutional portion of § 27-1-703(4), MCA (1987), was neither essential to the integrity of the statute, nor the purpose for its enactment, the remaining parts of that statute were severable and remained valid. *Newville*, 267 Mont. at 255-56, 883 P.2d at 804.

16

In response to *Newville*, the 1995 Legislature enacted the amendments and procedures which are the subject of this appeal.

Those amendments were in the form of Senate Bill 212 which amended subparagraph (4) of § 27-1-703, MCA (1987), to provide in part that:

> (4) . . . The liability of nonparties, including persons released from liability by the claimant and persons immune from liability to the claimant, must also be considered by the trier of fact, as provided in subsection (6).

Senate Bill 212 also added subparagraph (6) to § 27-1-703, MCA (1987), which provides as follows:

> (6) (a) In an action based on negligence, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty, which may be referred to as a nonparty defense.
>
> (b) In determining the percentage of liability attributable to persons who are parties to the action, the trier of fact shall consider the negligence of nonparties, including persons released from liability by the claimant and persons immune from liability to the claimant, if a nonparty defense is properly asserted in accordance with this subsection (6). A finding of negligence of a nonparty is not a presumptive or conclusive finding as to that nonparty for purposes of a prior or subsequent action involving that nonparty.
>
> (c) The burden of proof as to a nonparty's liability is on the defendant or defendants who affirmatively plead the nonparty defense, but this subsection (6) does not relieve the claimant of the burden of proving that negligence on the part of the defendant or defendants contributed as a proximate cause to the injury of the claimant or alter other proof requirements.
>
> (d) A nonparty defense must be affirmatively pleaded as a part of the answer. A defendant who gains actual knowledge of a nonparty defense after the filing of that defendant's answer may plead the defense with reasonable promptness, as determined by the trial court, in a manner that is consistent with:
>
> (i) giving the defendant a reasonable opportunity to discover the existence of a nonparty defense;
>
> (ii) giving the claimant a reasonable opportunity to defend against a nonparty defense; and

17

(iii) giving the claimant a reasonable opportunity, if appropriate, to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim. However, this subsection (iii) does not extend the period of limitation or revive the action if the period of limitation has expired.

(e) If a defendant asserts a nonparty defense, the defendant shall notify each nonparty who the defendant alleges caused the claimant's injuries, in whole or in part. Notification must be made by mailing the defendant's answer to each nonparty at the nonparty's last-known address by certified mail, return receipt requested.

In other words, Senate Bill 212, which proposed amendments to § 27-1-703, MCA (1987), revived the nonparty defense which had been found unconstitutional in *Newville*, but provided several procedural requirements which had not been present in the 1987 version of the statute. They include: (1) the requirement that the burden of proving a nonparty's liability is on the defendant; (2) a requirement that the nonparty defense be affirmatively pled; and (3) a requirement that a nonparty be notified that he or she is being blamed for the plaintiff's injuries.

The legislative history of Senate Bill 212 indicates that the purpose for which its proponents sought its enactment was to assure that liability for an injured person's damages was fairly apportioned among those who are at fault, and that no party be liable for a disproportionate amount of damages simply because of that party's superior financial ability to satisfy the judgment. Hearing on SB 212 before the Senate Comm. on Judiciary (Feb. 14, 1995) (statement of John Alke, Montana Liability Coalition).

However, conspicuous by its absence from the 1995 amendments was any opportunity for an unnamed third person to appear and

18

defend himself or herself. By that omission, the proponents of Senate Bill 212 ignored the central point of the *Newville* decision where we stated:

> No attorney represented Goodwin's interests at trial and as a result, it is possible that the application of percentage of negligence was higher than would have been appropriate had the facts as to her case been presented by her own counsel.

*Newville*, 267 Mont. at 254, 883 P.2d at 803.

On appeal from the order of the District Court, the Plumbs, and the *amici curiae* who have supported their argument, contend that if fairness is the purpose of limiting a defendant's liability to his, her, or its percentage of negligence, then the solution provided for by Senate Bill 212 is not rationally related to that objective because, in spite of the additional procedural requirements now added, a jury's apportionment of liability to someone who is not a party to the lawsuit, has not appeared, and has not been represented, will not be an accurate reflection of the true degree of that person's fault.

The Mall, and the *amici curiae* who have appeared on its behalf, contend that the 1995 amendments to § 27-1-703, MCA (1987), balance the rights of plaintiffs and defendants by providing a procedure for allocating liability based on the degree of a party's fault. They contend that without the "nonparty" process provided for by the 1995 amendments, defendants could not reduce their liability based on the true degree of a settling tort-feasor's fault, and that the amendments addressed all of the procedural safeguards discussed in *Newville*.

19

We conclude that, while the State has a legitimate interest in enacting a scheme of liability which apportions liability for damages based on the degree of a party's fault for another person's injuries, the nonparty defense provided for by the 1995 amendments to § 27-1-703, MCA (1987), is not rationally related to that legitimate governmental objective, but is more likely to accomplish the opposite result. We arrive at that conclusion for the following reasons:

1. The 1995 amendments to § 27-1-703, MCA (1987), permit the Mall to assign liability for the Plumbs' damages to Dr. Timothy Adams without affording Dr. Adams an opportunity to defend himself. As a result, Dr. Adams' professional reputation and economic interests are jeopardized without an opportunity to personally appear on his own behalf, cross-examine those witnesses who might criticize the care he provided, or offer evidence in support of his course of treatment. The percentage of liability assigned to Dr. Adams following this kind of process would not be a reliable or accurate apportionment of liability and cannot, therefore, be rationally related to the objectives for which Senate Bill 212's supporters contend that the 1995 amendments were enacted.

2. The Plumbs' right to recover that amount of damages from the defendant for which the defendant is proportionally responsible, and all of their damages in the event that the defendant is fifty-one percent or more responsible, is jeopardized by the potential this procedure affords for disproportionate assignment of liability to an unnamed, unrepresented, and

20

nonparticipating third person. The Plumbs are entitled, pursuant to § 27-1-703, MCA (1995), to recover all of their damages from the Mall in the event the Mall is found to be fifty-one percent or more at fault, and the proportionate amount of damages for which the Mall is at fault in the event the jury finds it to be less than fifty-one percent responsible. The greater the degree of fault that is assigned to unnamed nonparties, the greater the reduction in the Plumbs' recovery. Yet, without the opportunity to appear and defend themselves, nonparties are likely to be assigned a disproportionate share of liability, and the Plumbs' recovery is likely to be reduced beyond the degree to which a third party would be found at fault if he, she, or it actually had an opportunity to defend themselves.

3.    As noted in *Newville*, 267 Mont. at 252, 883 P.2d at 802, "there is no reasonable basis for requiring plaintiffs to examine jury instructions, marshal evidence, make objections, argue the case, and examine witnesses from the standpoint of the unrepresented parties," and requiring the plaintiff's attorney to serve in such a dual capacity is actually antithetical to his or her primary obligation, which is to represent the plaintiff by proving the plaintiff's case.

4.    To the extent that a party defendant is interested in a true and accurate apportionment of liability, our rules of third-party practice and § 27-1-703(4), MCA (1995), already provide the means by which contribution can be sought from those who have been unnamed by the plaintiff but who may have contributed, in

21

fact, to the plaintiff's injuries and damages. Rule 14(a), M.R.Civ.P., provides that a defendant may join, as a third-party defendant, anyone who may be responsible for any part of the plaintiff's claim. Section 27-1-703(4), MCA (1995), permits any party against whom a claim is asserted for negligence resulting in death or injury, to join any other party who may have contributed as a cause of the plaintiff's injury for purposes of contribution. Rule 20(a), M.R.Civ.P., has been identified as the procedural mechanism for that joinder. We conclude that apportionment of liability pursuant to these procedures would be rationally related to the Legislature's objective of assigning liability based on the degree of a party's fault for another party's damages. A person joined as a result of these procedures would be afforded the opportunity to participate in discovery, cross-examine those witnesses who blame him or her, and present evidence on his or her own behalf. Following these opportunities, which are compelled by traditional notions of fairness, any apportionment of liability to that third party is much more likely to bear some relationship to reality.

The one exception to the third-party practice alternative referred to in the preceding paragraph arises in the situation where a settling tort-feasor may be partially liable for an injured person's damages. As noted, based on language in § 27-1-703, MCA (1981), which allows "contribution . . . proportional to the negligence of the parties against whom recovery is allowed," settling tort-feasors may not be named as third-party defendants

22

for the purpose of contribution. However, as also noted in *Deere*, any recovery by the plaintiff is subject to a dollar-for-dollar offset by any amount paid by the settling tort-feasor. While it is true that, in some cases, that amount of offset may be less than the settling tort-feasor's proportionate share of liability, the converse is equally true. We also note that, in spite of our decision in *Deere*, the language in § 27-1-703, MCA (1981), is still present in § 27-1-703(4), MCA (1995).

For these reasons, we conclude that that part of § 27-1-703, MCA (1995), which allows apportionment of liability to parties who are not named in the lawsuit and who do not have an opportunity to appear and defend themselves (specifically, the quoted portion of subparagraph (4) and all of subparagraph (6)[1]), is not rationally

---

[1] (4) . . . . The liability of nonparties, including persons released from liability by the claimant and persons immune from liability to the claimant, must also be considered by the trier of fact, as provided in subsection (6).
. . . .
(6) (a) In an action based on negligence, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty, which may be referred to as a nonparty defense.
(b) In determining the percentage of liability attributable to persons who are parties to the action, the trier of fact shall consider the negligence of nonparties, including persons released from liability by the claimant and persons immune from liability to the claimant, if a nonparty defense is properly asserted in accordance with this subsection (6). A finding of negligence of a nonparty is not a presumptive or conclusive finding as to that nonparty for purposes of a prior or subsequent action involving that nonparty.
(c) The burden of proof as to a nonparty's liability is on the defendant or defendants who affirmatively plead the nonparty defense, but this subsection (6) does not relieve the claimant of the burden of proving that negligence on the part of the defendant or defendants contributed as a proximate cause to the injury of the claimant or alter other proof requirements.

23

related to the legitimate government objective of fairly apportioning liability among parties based on the degree to which their negligence contributes to another person's injuries; and therefore, that the offending portions of § 27-1-703, MCA (1995), violate the right of substantive due process guaranteed to Roberta and Martin Plumb and Dr. Timothy Adams by the Fourteenth Amendment to the United States Constitution, and Article II, Section 17, of the Montana Constitution. Our conclusion that the offending statutory provisions violate the right to substantive due process provided for in the Montana Constitution is independent of and separate from our analysis of those rights provided for by the United States Constitution.

For those reasons set forth in *Newville v. State Department of Family Services* (1994), 267 Mont. 237, 883 P.2d 793, we also conclude that those portions of § 27-1-703, MCA (1995), which we find offensive

---

(d) A nonparty defense must be affirmatively pleaded as a part of the answer. A defendant who gains actual knowledge of a nonparty defense after the filing of that defendant's answer may plead the defense with reasonable promptness, as determined by the trial court, in a manner that is consistent with:
(i) giving the defendant a reasonable opportunity to discover the existence of a nonparty defense;
(ii) giving the claimant a reasonable opportunity to defend against a nonparty defense; and
(iii) giving the claimant a reasonable opportunity, if appropriate, to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim. However, this subsection (iii) does not extend the period of limitation or revive the action if the period of limitation has expired.
(e) If a defendant asserts a nonparty defense, the defendant shall notify each nonparty who the defendant alleges caused the claimant's injuries, in whole or in part. Notification must be made by mailing the defendant's answer to each nonparty at the nonparty's last-known address by certified mail, return receipt requested.

24

to the right to substantive due process are not necessary to the integrity of the remainder of that statute, were not an inducement to the remainder of the statute's enactment, and are severable from the valid portions of § 27-1-703, MCA (1995). We further conclude that the remainder of the statute is capable of being implemented in accordance with the Legislature's intent.

Based on the foregoing opinion, the District Court's order permitting Southgate Mall Associates to amend their answer and set forth a seventh affirmative defense which assigned liability to unnamed persons is reversed, and this case is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
District Court Judge John C. McKeon
sitting for Justice Charles E. Erdmann

25

Chief Justice J. A. Turnage respectfully concurs and dissents.

I do not disagree with the result reached by the majority in this case. However, I dissent to much that has been said in the majority opinion which is overbroad and entirely unnecessary.

The first issue in this case is whether the facts and issues presented are appropriate for resolution by supervisory control.

In State ex rel. Racicot v. District Court (1990), 244 Mont. 521, 798 P.2d 1004, this Court held that assumption of original jurisdiction by supervisory control is proper when three circumstances exist:

> (1) constitutional issues of major statewide importance are involved;
>
> (2) the case involves purely legal questions of statutory and constitutional construction; and
>
> (3) urgency and emergency factors exist, making the normal appeal process inadequate.

Racicot, 244 Mont. at 524, 798 P.2d at 1006 (emphasis added).

This three-part test has been followed in our subsequent decisions of Craig v. District Court (1993), 262 Mont. 201, 864 P.2d 791; State ex rel. Nelson v. District Court (1993), 262 Mont. 70, 863 P.2d 1027; and Associated Press v. State (1991), 250 Mont. 299, 820 P.2d 421.

The majority in this case concludes that the issues in this case satisfy all three of the three-part requirements of the Racicot decision and the cases that followed that decision. The majority, however, goes on the conclude that to the extent that the Racicot decision requires that all three elements be satisfied before this Court will accept supervisory control, it is necessary

26

to reverse the Racicot decision and the subsequent decisions that have applied the test as set forth in Racicot.

To the extent that the majority opinion reverses this prior precedent, I believe the majority opinion is wrong.

Under this new approach to the granting of supervisory control it is entirely possible that all a petitioner need allege is that the issues involved in the petition address constitutional issues of major statewide importance or the case involves a purely legal question of statutory or constitutional construction.

This part of the majority opinion is an open invitation for petitioners to come to this Court and point to this case as precedent asking this Court to intervene and decide the case for them without the necessity of proceeding with a normal appeal process.

This short-cut to questionable justice is inappropriate and undoubtedly will bring to the Supreme Court a great number of extraordinary petitions for supervisory control. I therefore respectfully dissent to the foregoing portion of the majority opinion.

I further dissent to a portion of what has been stated in the majority opinion concerning the second issue in this case, relating to the constitutionality of that portion of § 27-1-703(6), MCA (1995) relating to damages caused or contributed to by unnamed third parties.

I do not disagree with the ultimate result of the Court's decision in its conclusions on that issue; however, I believe that

27

the Court's conclusion is far too overbroad and unnecessary.

I agree with that portion of the majority opinion which states:

> To the extent that a party defendant is interested in a true and accurate apportionment of liability, our rules of third-party practice and § 27-1-703(4), MCA (1995), already provide the means by which contribution can be sought from those who have been unnamed by the plaintiff but who may have contributed, in fact, to the plaintiff's injuries and damages. Rule 14(a), M.R.Civ.P., provides that a defendant may join, as a third-party defendant, anyone who may be responsible for any part of the plaintiff's claim. Section 27-1-703(4), MCA (1995), permits any party against whom a claim is asserted for negligence resulting in death or injury, to join any other party who may have contributed as a cause of the plaintiff's injury for purposes of contribution. Rule 20(a), M.R.Civ.P., has been identified as the procedural mechanism for that joinder. We conclude that apportionment of liability pursuant to these procedures would be rationally related to the Legislature's objective of assigning liability based on the degree of a party's fault for another party's damages. A person joined as a result of these procedures would be afforded the opportunity to participate in discovery, cross-examine those witnesses who blame him or her, and present evidence on his or her own behalf. Following these opportunities, which are compelled by traditional notions of fairness, any apportionment of liability to that third party is much more likely to bear some relationship to reality.

Having set forth this rational approach to a method of apportionment of liability as a legislative objective in assigning liability based on the degree of a party's fault for another party's damages, the majority opinion at that point jumps off the track and states: "The one exception to the third-party practice alternative referred to in the preceding paragraph arises in the situation where a settling tortfeasor may be partially liable for an injured person's damages." The majority opinion relies on State ex rel. Deere & Co. v. District Court (1986), 224 Mont. 384, 730

28

P.2d 396, to support this exception to the third-party practice alternative. This reliance is misplaced.

In *Deere* this Court stated that "the principal issue we decide here is that a joint tortfeasor who settles with the claimant before judgment on the claim is entered in a district court is not subject to claims for contribution . . . from the nonsettling joint tortfeasors." *Deere*, 730 P.2d at 398.

The majority opinion in this case states that "settling tortfeasors may not be named as third party defendants for the purposes of contribution."

*Deere* is based upon § 27-1-703, MCA (1981), relating to contribution. *Deere* does not address the question of apportionment of liability. This Court in *Deere* stated with relation to the question of contribution, which again I repeat is not an issue in this case, the following:

> In reality, our decision on this issue is hinged upon our earlier interpretation of the statute herein that no right of contribution exists from a settling tortfeasor. It would make no sense to keep a settling tortfeasor in the action as an additional defendant or a third party defendant to determine its proportional fault for plaintiff's injuries, when the nonsettling defendants have no right of contribution from the settling defendant. Contribution under § 27-1-703 is the obligation of "parties against whom recovery is allowed."

*Deere*, 730 P.2d at 404.

Contribution and apportionment of liability are two separate and distinct legal concepts. *Deere* does not support carving out an exception to the third-party practice alternative, and, in doing so, I respectfully submit that the majority opinion is wrong.

Certainly the legislature has a legitimate interest in

29

November 25, 1996

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

✓ Gregory O. Morgan
Robert Cameron
Attorneys at Law
P.O. Box 1530
Bozeman, MT 59771-1530

✓ Dan L. Spoon, Esq.
Reep, Spoon & Gordon
P.O. Box 9019
Missoula, MT 59807

✓ John Alke *(picked up in person)*
Hughes, Kellner, Sullivan & Alke
P.O. Box 1166
Helena, MT 59624

✓ Hon. Ed P. McLean
District Judge
Missoula County Courthouse
Missoula, MT 59802

✓ Patricia O'Brien Cotter
Attorney at Law
P.O. Box 3425
Great Falls, MT 59403-3425

✓ Richard F. Cebull, Esq.
Brown, Gerbase, Cebull, Fulton, Harman & Ross
P.O. Drawer 849
Billings, MT 59103-0849

✓ Montana Defense Trial Lawyers, Inc.
36 S. Main

Helena, MT 59601

Randy J. Cox
Boone, Karlberg & Haddon
P.O. Box 9199
Missoula, MT 59807-9199

T. Thomas Singer
Moulton, Bellingham, Longo & Mather
Ste. 1900, Sheraton Plaza, PO Box 2559
Billings, MT 59103-2559

Jerome T. Loendorf, Esq.
Harrison, Loendorf, Poston & Duncan
2225 11th Avenue, Suite 21
Helena, MT 59601

R. Stephen Browning, Esq.
Browning, Kaleczyc, Berry & Hoven
P.O. Box 1697
Helena, MT 59624-1697

William A. Rossbach
Rossbach & Whiston
401 Washington
Missoula, MT 59802

J. Daniel Hoven
Browning Kaleczyc, Berry & Hoven
P.O. Box 1697
Helena, MT 59601

Robert L. Sterup, Esq.
Dorsey & Whitney
P.O. Box 7188
Billings, MT 59103

Tiffany B. Lonnevik
Attorney at Law
P.O. Box 849
Billings, MT 59103-0849

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy