No. 98-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 221

---

JONATHAN CUSENBARY,

Plaintiff and Respondent,

v.

GLEN A. MORTENSEN, d/b/a

TOWN TAVERN,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matthew Hutchison, McPherson & Hutchison; Great Falls, Montana

For Respondent:

Norman L. Newhall & J. Kim Schulke; Linn Newhall, Martin & Schulke;

Great Falls, Montana

_____

Submitted on Briefs: February 11, 1999

Decided: September 22, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶On July 2, 1996, Jonathan Cusenbary brought this action in the Eighth Judicial

District Court, Cascade County, to recover damages he suffered after being injured on July 28, 1993, by a vehicle driven by James Wells. Cusenbary brought this action against Glen Mortensen doing business as the Town Tavern for serving Wells alcohol immediately prior to the incident. On March 30, 1998, a jury returned a verdict against Mortensen in the amount of $750,000 and this appeal followed. We affirm the judgment of the District Court.

2. ¶The issues presented on appeal are as follows:

3. ¶1. Did the District Court abuse its discretion when it dismissed Mortensen's proposed jury instruction regarding his defense of intervening, superseding cause?

4. ¶2. Did the District Court err when it excluded evidence of criminal proceedings against James Wells which arose from this incident?

5. ¶3. Did the District Court err when it allowed evidence and testimony regarding James Wells' blood alcohol content and evidence regarding the amount of alcohol James Wells consumed prior to arriving at the Town Tavern?

6. ¶4. Did the District Court properly dismiss Mortensen's third party complaint and refuse to permit the jury to apportion the alleged negligence of James Wells, Pamela Wells, and Georgina Wells?

## FACTUAL AND PROCEDURAL BACKGROUND

1. ¶James Wells suffered a broken neck in an automobile accident in 1991. Although initially paralyzed, Wells recovered to the point of being able to walk without a limp. When Wells consumes alcohol, however, he loses control of his legs.

2. ¶On the evening of July 28, 1993, Wells was driven to the Town Tavern in Great Falls, Montana by his niece. Glen Mortensen owns the Town Tavern. Several members of Wells' family including Katherine Wells, Pamela Wells, and Georgina Wells assisted Wells from the vehicle into the Tavern. Witnesses also saw Wells' family members helping him to move from a chair at a table in the Tavern to his wheelchair, and assisting him to the restroom. After approximately two hours in the Tavern, Wells' family members pushed him out of the Tavern and placed him in the passenger side of a vehicle. Wells estimated that he had consumed "about eight" beers while in the Tavern.

3. ¶Tavern patron Korey McGaffey observed Wells' behavior while Wells was in the Tavern. To McGaffey, Wells was "obviously drunk, in a bad mood." McGaffey observed Wells shout and yell and saw him "tip over and hold his head in his hand and swerve and weave up and yell." He saw Wells "pound a drink and slam it

down," and noticed that Wells' speech was "very slurred." He also noticed that Wells would get "real quiet and groggy down and explosively snap up and start barking at people." To McGaffey, Wells was "very obviously" intoxicated. McGaffey recalls being relieved when Wells finally left because other patrons were "trying to avoid" Wells and because Wells had created a "bad situation."

4. ¶Another patron, Jarrod Hall noticed Wells immediately after entering the bar because Wells was "loud, obnoxious, and acting intoxicated." Hall recalls that Wells was arguing and talking loudly and was "obviously intoxicated." He also noticed that Wells' speech was "very slurred" and hard to understand.

5. ¶While sitting in the car, Wells apparently moved into the driver's seat of the vehicle, started the vehicle, and drove it through the south wall of the Tavern injuring Jonathan Cusenbary, another patron of the Tavern. Wells was arrested, charged, and pled guilty to several felonies. He was sentenced to 20 years in prison. Wells testified that he has no recollection of driving through the Tavern wall and believes he was "too intoxicated to exercise good judgment."

6. ¶Toxicologist Dr. Brian Finkle estimated that Wells' blood alcohol concentration (BAC) at the time of the accident was between .28 percent and .30 percent. Dr. Finkle identified slurred speech, staggered walk, talkativeness, and "fighting" behavior as subjective signs of intoxication that can be readily observed and which most people recognize as drunkenness. Dr. Finkle stated that as a person's blood alcohol concentration increases, the subjective signs of intoxication such as slurred speech also increase. Dr. Finkle also stated that an estimated blood alcohol concentration of .28 percent to .30 percent is "very high" such that it would "most certainly" render a person visibly "grossly intoxicated." He testified that such persons have "great difficulty" with speech; their personality is distorted, and they may be on the verge of falling asleep or "fighting and antagonistic." Dr. Finkle testified that "without question" Wells would have been showing obvious signs of intoxication at least one hour prior to the incident.

7. ¶Jonathan Cusenbary commenced the present action by filing a complaint against Glen Mortensen, d/b/a/ Town Tavern, for the injuries he received as a result of Wells' conduct. Cusenbary claims that Mortensen's employees "negligently served intoxicating liquors and alcoholic beverages to James Wells" when Wells was already visibly intoxicated. Cusenbary alleges that Mortensen violated § 27-1-710, MCA, the dram shop act, when he furnished alcoholic beverages to a person who is "visibly intoxicated."

8. ¶Mortensen asserted as an affirmative defense that Wells' conduct of driving the vehicle through the Tavern wall was an intervening, superseding cause which was

not reasonably foreseeable to Mortensen and thus severed the chain of causation. The District Court excluded all evidence that Wells' actions were intentional, that he had been convicted of several felonies for his actions, and that he was sentenced to serve 20 years in the Montana State Prison. The District Court dismissed Mortensen's affirmative defense and ruled Wells' conduct did not constitute an intervening, superseding cause and was foreseeable as a matter of law. The District Court also denied all of Mortensen's instructions that related to this defense.

9. ¶By third party complaint, Mortensen sued James Wells, Pamela Wells, and Georgina Wells. Cusenbary released these third party defendants and the District Court dismissed Mortensen's complaint against them. The District Court limited Mortensen's defense to the sole issue of whether Wells was visibly intoxicated and refused to allow the jury to apportion any percentage of negligence to the third party defendants.

## ISSUE I

1. ¶Did the District Court abuse its discretion when it denied Mortensen's proposed jury instruction regarding his defense of intervening, superseding cause?

2. ¶On appeal Mortensen claims that Cusenbary's damages proximately resulted from an intervening, superseding, new and independent cause which was not reasonably foreseeable to Mortensen and thus severed the chain of causation from his original negligent acts. He maintains that the District Court erred when it dismissed his jury instruction regarding this affirmative defense and concluded that Wells' conduct was foreseeable. He maintains that the District Court should have left the issue of foreseeability for the jury to decide.

3. ¶A district court has discretion regarding the instructions it gives or refuses to give and will not be reversed absent an abuse of discretion. *See Busta v. Columbus Hosp.* (1996), 276 Mont. 342, 359, 916 P.2d 122, 131; *Lacock v. 4-B's Restaurant* (1996), 277 Mont. 17, 20, 919 P.2d 373, 375. When reviewing an instruction to determine whether it was properly refused, the appellate court considers the instructions in their entirety, as well as in connection with the other instructions given and the evidence at trial. *See Busta,* 276 Mont. at 359, 916 P.2d at 131; *Lacock,* 277 Mont. at 20-21, 919 P.2d at 375. It is not reversible error to refuse an offered instruction unless the refusal affects the substantial rights of the party proposing the instruction. *See Busta,* 276 Mont. at 360, 916 P.2d at 132; *Lacock,* 277 Mont. at 21, 919 P.2d at 375. A party is not prejudiced by a refusal of his or her proposed instructions when the subject matter of the instruction is not supported by the evidence introduced at

trial. *See Busta,* 276 Mont. at 360, 916 P.2d at 132.

4. ¶The issue of causation requires a determination, ordinarily by the fact finder, that a defendant's conduct helped produce the injury and that the injury would not have occurred without it. As we explained in *Estate of Strever v. Cline* (1996), 278 Mont. 165, 175, 924 P.2d 666, 672, however, in cases involving alleged intervening causes, foreseeability is properly considered with respect to causation. According to the facts presented here, we conclude as we did in *Strever*, that failure of proof of causation can be determined as a matter of law.

5. ¶Accordingly, we review a district court's conclusions of law to see whether the courts interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04); *see also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674.

6. ¶In order for Cusenbary to prevail against Mortensen on a claim for negligence, he must establish the following: (1) the existence of a legal duty from Mortensen to Cusenbary; (2) a breach of that duty; (3) causation; and (4) damages to Cusenbary. *See White v. Murdock* (1994), 265 Mont. 386, 389, 877 P.2d 474, 476. If a plaintiff is unable to establish any one element, the negligence claim fails. *See White*, 265 Mont. at 389-90, 877 P.2d at 476; *Dvorak v. Matador Serv., Inc.* (1986), 223 Mont. 98, 107, 727 P.2d 1306, 1311.

7. ¶The dram shop act codified at § 27-1-710, MCA, provides that a tavern owner is liable for foreseeable injury-producing accidents of a patron if the tavern owner provided alcohol to a "visibly intoxicated" patron. Section 27-1-710 (3)(b), MCA, provides in relevant part:

(3) Furnishing a person with an alcoholic beverage is not a cause of, or grounds for finding the furnishing person or entity liable for, injury or damage wholly or partly arising from an event involving the person who consumed the beverage unless:

. . . .

(b) the consumer was visibly intoxicated.

Mortensen has maintained that it was not foreseeable to him or his employees at the Town Tavern that a wheelchair-bound patron, apparently disabled in such a manner and to such an extent that he was to all appearances incapable of operating his wheelchair himself, and assisted by family members, would somehow get into the driver's seat of a vehicle and drive the vehicle through the wall of the Tavern.

1. ¶The District Court concluded that the conduct of Wells did not constitute an intervening, superseding cause and was foreseeable to Mortensen as a matter of law.

2. ¶Cusenbary maintains that the District Court did not err because when an intervening cause is reasonably foreseeable it does not absolve the defendant of liability. *See USF&G v. Camp* (1992), 253 Mont. 64, 70, 831 P.2d 586, 589. Cusenbary notes the following facts to establish that the intervening cause--Wells driving a vehicle through the wall of the Tavern--was foreseeable: Wells was already intoxicated when he arrived at the Town Tavern; other patrons saw numerous signs of Wells' drunken behavior and observed that his intoxication was obvious; and the Town Tavern continued to serve alcohol to Wells for a period of approximately two hours by which time Wells was "grossly intoxicated." Cusenbary supports the District Court's conclusion that if one furnishes alcoholic beverages to such a person, it is reasonably foreseeable that the person will thereafter engage in drunken behavior that may endanger others.

3. ¶In order for Mortensen's conduct of serving alcohol to Wells to be considered a cause of Cusenbary's injuries, it must be a cause in fact, or actual cause of the injury. In this case, actual causation is not at issue. Rather, this case involves the allegation that the chain of causation was severed by an independent intervening act. However, not all intervening acts are independent. Those that are foreseeable do not break the chain of causation. In other words, if one of the reasons that makes a defendant's act negligent is a greater risk of a particular harmful result occurring, and that harmful result does occur, the defendant is generally liable. The test is based on foreseeability. *See Camp*, 253 Mont. at 69-70, 831 P.2d at 589.

4. ¶Mortensen claims, that unlike a direct cause case in which the facts present an uninterrupted chain of events from the time of the negligent act to the time of the plaintiff's injury, this case is one involving an independent, intervening cause. An intervening cause case is one in which the facts indicate that a force came into motion after the time of the defendant's negligent act and combined with the negligent act to cause the injury to the plaintiff. Whether an intervening force will cut off a defendant's liability for the plaintiff's injury is, once again, determined by foreseeability. *See Strever*, 278 Mont. at 175-76, 924 P.2d at 672.

5. ¶Mortensen's theory is that in this case there was an intervening force that produced an unforeseeable result that supersedes and serves to break the causal connection between Mortensen's initial act of serving Wells alcohol, and Cusenbary's injury. He maintains that the intervening force was Wells' act of getting into the driver's seat of a vehicle and driving it through the Tavern wall. Mortensen maintains that this act itself becomes a direct, immediate cause of Cusenbary's injury and, thus, relieves Mortensen of liability for the consequences of his negligent act.

6. ¶In *Busta* we held that in direct cause cases--those in which no independent intervening forces are present, proof of causation is satisfied by proof that the defendant's conduct was the cause in fact or actual cause of the damage alleged, and no consideration of the concept of foreseeability is required on the issue of causation. *See Busta*, 276 Mont. at 373, 916 P.2d at 140. Otherwise, in all cases involving independent, intervening forces, we consider the question of foreseeability.

7. ¶We have previously examined situations in which an alleged independent, intervening act potentially supersedes the original negligent act to relieve the defendant of liability, and we find this case to be dissimilar. In *Strever*, several youths including Strever and Cline, stole a gun from an unlocked vehicle. Some time thereafter, while Cline was attempting to remove the ammunition clip from the gun, the gun discharged, killing Strever. We affirmed the district court's grant of summary judgment in favor of the vehicle owner on the basis that the vehicle owner's negligence was superseded by the independent, intervening criminal and grossly negligent acts of Cline and his companions.

8. ¶In this case, unlike the act of leaving a vehicle unlocked, the act of Mortensen in serving alcohol to Wells is the very act which caused the conduct that resulted in the injury to Cusenbary. The consequences of serving alcohol to a person who is visibly intoxicated are reasonably foreseeable precisely because of the causal relationship between serving alcohol and drunken conduct. Wells' drunken conduct was not freakish, bizarre, or unpredictable as Mortensen asserts. Rather, drunken conduct is the expected, predictable, and therefore reasonably foreseeable outcome of serving alcohol to a person who is already intoxicated. As Justice Andrews explained in his dissent in the oft-cited decision of the Court of Appeals of New York in *Palsgraf v. Long Island Railroad* (1928), 162 N.E. 99, 104 (Andrews, J. dissenting):

The court must ask itself whether there was a natural and continuous sequence between cause and effect. Was the one a substantial factor in producing the other? Was there a direct connection between them, without too many intervening causes? Is the effect of

cause on result not too attenuated? Is the cause likely, in the usual judgment of mankind, to produce the result? Or, by the exercise of prudent foresight, could the result be foreseen?

Cited in *Busta*, 276 Mont. at 361, 916 P.2d at 133. The situation presented in this case meets this standard.

1. ¶The facts of the present case and the facts in *Strever* both involve intervening causes. However, the intervening cause in *Strever* (criminal and grossly negligent acts by several juveniles) was not the foreseeable result of the original negligence complained of (leaving a vehicle unlocked). On the other hand, the intervening cause in the present case (Wells' drunken driving) is the reasonably foreseeable result of the original negligence complained of (Mortensen's serving of alcohol to Wells who was already intoxicated). In *Strever*, the affirmative defense of intervening, superseding cause applied. In this case it does not.

2. ¶Other cases involving intervening causes such as *Camp* and *King v. State of Montana* (1993), 259 Mont. 393, 856 P.2d 954, are distinguishable from this case on the same basis as *Strever*. In *Camp*, a prison escapee accidentally started a fire when he fell asleep and dropped a lit cigarette on a couch. USF&G sued the Phillips County Sheriff alleging negligence in allowing the escape. Similarly, in *King*, a mental patient murdered the plaintiff's son after escaping from the Montana State Hospital. Plaintiff sued the State alleging negligence in allowing the release.

3. ¶These cases are distinguishable because in *Camp*, the conduct which resulted in the injury (dropping a lit cigarette) was not the forseeable result of the negligent conduct complained of (negligence that allowed escape). Similarly, in *King*, the offending conduct (murder), was not the forseeable result of the negligence complained of (release of a mental patient). In contrast, as we held in *Nerhing v. LaCounte* (1986), 219 Mont. 462, 712 P.2d 1329, it is foreseeable that serving alcohol to one who is already intoxicated causes drunken conduct that may endanger others.

4. ¶Because this case involves foreseeability with respect to a tavern owner and the application of the dram shop act, mention must be made of the application of foreseeability as it is specifically applied in liquor liability cases. Montana's earliest liquor liability case explained that dram shop liability evolved because it became widely known that an intoxicated patron may attempt to drive home from a bar or tavern and become involved in an accident. *See Deeds v. U.S.* (D. Mont. 1969), 306 F.Supp. 348. In *Deeds* the court noted:

The increasing frequency of serious accidents caused by drivers who are intoxicated is a fact which must be well known to those who sell and dispense liquor. This lends support to those cases which have found the automobile accident to be "the reasonably foreseeable" result of furnishing liquor to the intoxicated driver, at least where the person furnishing the liquor knew that the intoxicated person would be driving on a public highway.

*Deeds*, 306 F.Supp at 358.

1. ¶In *Jevning v. Skyline Bar* (1986), 223 Mont. 422, 726 P.2d 326, we described what type of conduct is foreseeable to bar owners serving alcohol:

"[C]onsumption of the alcoholic beverages served, subsequent driving, and *the likelihood of an injury-producing accident are foreseeable intervening acts which do not relieve the tavern owner of liability for negligence." Nehring,* 712 P.2d at 1335, 43 St.Rep. at 99. In *Bissett v. DMI, Inc.,* we held that a tavern owner who serves an intoxicated minor could be held liable for injuries sustained by that minor in a motor vehicle accident, and that the minor's acts in drinking alcoholic beverages served to her *and then becoming involved in an injury-producing accident were reasonably foreseeable events that would no longer protect a defendant from liability for negligence. Bissett v. DMI, Inc.,* 717 P.2d at 547-48, 43 St.Rep. at 255.

*Jevning*, 223 Mont. at 424, 726 P.2d at 327 (emphasis added).

1. ¶In *Nehring*, we also discussed foreseeability as it relates to tavern owners:

Both *Deeds,* 306 F.Supp. 348, and *Johnson v. United States* (D.Mont.1980), 496 F.Supp. 597, considered Montana law on negligence and held the seller of alcoholic beverages liable to third parties injured by an intoxicated patron. After establishing the seller's duty to the injured party, Deeds discussed the element of causation and held that the operators who served alcoholic beverages

. . . could reasonably foresee or anticipate some accident or injury as a reasonable and natural consequence of their illegal and negligent acts, particularly in view of the ever increasing incidence of serious automobile accidents resulting from drunken driving.

. . . .

*We adopt this approach in the case at bar and hold that consumption of the alcoholic beverages served, subsequent driving, and the likelihood of an injury-producing accident are foreseeable intervening acts which do not relieve the tavern operator of liability for negligence.*

*Nehring*, 219 Mont. at 469-70, 712 P.2d at 1334-35 (emphasis added).

1. ¶ When one consumes alcohol in Montana, subsequent driving resulting in an injury-producing accident is an intervening act, but it is an intervening act we have determined to be reasonably foreseeable as a matter of law. We recognize that in this case the driver of the vehicle appeared to the tavern owner to be physically incapable to drive a vehicle and, thus, regardless of the amount of alcohol served, unable to cause an injury-producing accident. In fact, as Mortensen claims, Wells appeared to have been wheelchair-bound and under the complete care and supervision of his family. It is because of this that Mortensen argues that Wells' conduct functions to sever the otherwise foreseeable causal chain of events in a typical liquor liability case. We disagree.

2. ¶Pursuant to the dram shop act, § 27-1-710, MCA, a tavern owner is prohibited from furnishing alcoholic beverages to a person who is "visibly intoxicated." Nowhere in the statute exists a requirement that the tavern owner assess the medical condition of the patron in conjunction with the patron's level of intoxication. The tavern owner is simply responsible for assessing visible intoxication regardless of the physical ability and condition of the patron. Medical conditions vary from person to person and exhibit themselves in ways that individuals without medical training may not recognize or correctly interpret. This is obviously one such case. The bartenders at the Town Tavern were convinced that Wells was a quadriplegic when, in fact, his medical condition was far from that. Wells was able-bodied enough to get behind the wheel of a vehicle and drive. It is because of situations such as this that the only subjective symptoms that § 27-1-710, MCA, requires a tavern owner to interpret are

those which indicate visible intoxication.

3. ¶As we stated in *Kieger v. State* (1990), 245 Mont. 457, 462, 802 P.2d 1248, 1251, when reasonable minds could reach but one conclusion, the question of foreseeability may be determined as a matter of law. Accordingly, we conclude that as a matter of law Wells' conduct of driving a vehicle while intoxicated, through the wall of the Town Tavern, was a foreseeable intervening cause that did not serve to supersede or break the causal chain between Mortensen's original negligence and the injury to Cusenbary. The District Court correctly interpreted the law and did not abuse its discretion when it denied Mortensen's proposed jury instruction.

## ISSUE 2

1. ¶Did the District Court err when it excluded evidence of criminal proceedings against James Wells which arose from this incident?

2. ¶Wells pled guilty to several felony charges as a result of this incident and was sentenced to 20 years in prison. Mortensen requested that the District Court take judicial notice of Wells' judgment of conviction and sentencing order. Mortensen also requested a limiting instruction that the conviction be admissible "only for the purpose of instructing the jury of the crimes of which Wells was sentenced and the necessary elements of each crime." The District Court denied Mortensen's requests and disallowed evidence of Wells' criminal proceedings.

3. ¶On appeal, Mortensen claims that Wells' judgment of conviction was relevant to his principal defense that it was not foreseeable to Town Tavern personnel that a wheelchair-bound patron would somehow drive a vehicle through the wall of the building. Mortensen claims that Wells' act was intentional and, therefore, criminal. He argues that in *Strever* we held that one normally has less reason to anticipate acts on the part of others which are "malicious and intentionally damaging" and especially when "such acts are criminal." *Strever*, 278 Mont. at 176-77, 924 P.2d at 672-73.

4. ¶However, we noted in *Strever*, 278 Mont. at 176, 924 P.2d at 673, that this rule applies "in the absence of any reason to expect the contrary." As discussed earlier, in *Strever* we concluded that the owner of an unlocked truck had no reason to anticipate the criminal and grossly negligent conduct of the youths who stole a gun from the truck. Here, Mortensen is the very person who served the alcohol that resulted in Wells' drunken conduct. Thus, Mortensen had every reason to "expect the contrary" that Wells would engage in drunken conduct.

5. ¶Mortensen concedes that the dram shop act and Montana case law have established

that it is foreseeable as a matter of law that an intoxicated tavern patron may drive a vehicle while intoxicated and that an injury-producing accident may result. However, he maintains that when this conduct is criminal and intentional, it supersedes the tavern owner's original liability. The question, however, is not whether Wells' conduct was criminal and intentional, but whether it was forseeable. As we discussed in *Strever,* some criminal conduct may be reasonably foreseeable.

6. ¶Accordingly, we conclude that the District Court did not abuse its discretion because evidence of Wells' criminal convictions in relation to this matter are inadmissible for the same reasons that Mortensen's affirmative defense of intervening, superseding cause is inadmissible. It was reasonably foreseeable as a matter of law that Wells would engage in this type of drunken conduct.

# ISSUE 3

1. ¶Did the District Court err when it allowed evidence and testimony regarding James Wells' blood alcohol content and evidence regarding the amount of alcohol James Wells consumed prior to arriving at the Town Tavern?

2. ¶We have held that a district court has broad discretion to determine whether evidence is admissible, and its evidentiary rulings should not be overturned absent an abuse of discretion. *See Bueling v. Swift*, 1998 MT 112, ¶ 24, 958 P.2d 694, ¶ 24.

3. ¶At trial, Mortensen contended that the test results of Wells' blood alcohol content taken by the hospital shortly after the incident were not admissible because the standard for civil liability pursuant to § 27-1-710, MCA, is "visible intoxication," rather than "legal intoxication." The District Court granted Mortensen's motion in limine and refused evidence of the BAC test results. The District Court later held, however, that if Cusenbary's expert on the issue of blood alcohol content, toxicologist Dr. Brian Finkle, could be qualified to give an opinion of blood alcohol content from a hypothetical situation, rather than from the hospital's BAC test results, then the court would allow the opinion. Based upon the District Court's ruling, Cusenbary did not introduce any evidence of the BAC test results from the hospital. Instead, Cusenbary's counsel asked Dr. Finkle a hypothetical based upon the testimony of Wells in which he had to estimate Wells' BAC content on the evening in question based upon Wells' own testimony of the number of drinks he consumed that evening.

4. ¶Mortensen asserts that Dr. Finkle's estimate of blood alcohol content should be excluded "because eye witness testimony is the only kind of evidence that is

relevant to the issue of how Wells appeared." However, Dr. Finkle expressly testified that there is a direct correlation between the level of alcohol in a person's blood and observable signs of intoxication. Dr. Finkle explained that the subjective, observable signs of intoxication include slurred speech, staggered walk, talkativeness, and fighting behavior. He explained that the more a person drinks the more severe and obvious the symptoms of intoxication become because there is a proportional relationship to the rising blood alcohol concentration and the severity of the symptoms of intoxication.

5. ¶It is apparent that the District Court agreed with Mortensen's contention that the BAC test results were not probative of the issue of visible intoxication at the time that Wells was served alcohol. However, based upon a hypothetical set of facts taken directly from the testimony of Wells and relating to the amount of alcohol consumed, the rate of consumption, and other variables, Dr. Finkle was able to estimate a range of Wells' probable blood alcohol concentration at the time of the accident. Thus, Dr. Finkle's testimony is not based upon BAC test results taken after the accident. Rather, he provided expert opinion testimony concerning his estimate of Wells' blood alcohol concentration at the time of the accident. As explained by Dr. Finkle, blood alcohol concentration at the time of the accident is directly related to the visible signs of intoxication that a person may exhibit.

6. ¶Accordingly, based upon Dr. Finkle's estimate of blood alcohol concentration, it was probable that Wells was displaying observable signs of intoxication while served alcohol by Mortensen. Therefore, we conclude that Dr. Finkle's opinion was relevant pursuant to Rule 401, M.R.Evid., and the District Court did not abuse its discretion.

## ISSUE 4

1. ¶Did the District Court properly dismiss Mortensen's third party complaint and refuse to permit the jury to apportion the alleged negligence of James Wells, Pamela Wells, and Georgina Wells?

2. ¶Approximately nine months after Cusenbary filed his complaint, Mortensen filed a third party complaint against James Wells, Georgina Wells, Pamela Wells, Virginia Wells, Jane Does I-IV, and John Does I-IV. Having no insurance or other resources with which to defend the allegations in Mortensen's third party complaint, James, Georgina, and Pamela failed to appear. Virginia Wells could not be located in order to be served with the complaint. Mortensen took the default and now contends that by reason of their default James, Georgina, and Pamela admitted that Wells

negligently caused injuries to Cusenbary, and that they provided alcoholic beverages to Wells. Having determined that James, Georgina, and Pamela were judgment-proof, Cusenbary released each of them from liability for the nominal consideration of $1.

3. ¶With regard to Mortensen's claim that by default the third party defendants admitted Wells' negligence, it is well settled that an admission predicated upon a default is effective only against the particular party who makes the default, and does not bind any other party to the litigation. *See* 46 Am. Jur. 2d *Judgments* § 321. The admissions obtained by default against James, Georgina, and Pamela were admissible only on the issue of their negligence and not that of Mortensen.

4. ¶Mortensen maintains that the release Cusenbary gave to the third party defendants was not in good faith pursuant to *State ex rel. Deere & Co. v. District Court* (1986), 224 Mont. 384, 730 P.2d 396, because Pamela and Georgina were not indigent as Cusenbary claims they were. Our review of the deposition and testimony of the third party defendants, however, reveals otherwise.

5. ¶James Wells has no income or property and is serving time in prison. Georgina Wells has a monthly income of $700 but no property, no bank account, and no cash or other assets. Pamela Wells has a stereo, television, a monthly income of $1219, and a 1980 pickup truck, but has no real property, no bank account, no home, and no cash. Based on this information we conclude that although these third party defendants have some nominal assets, they can be reasonably considered to be indigent and, therefore, the money paid and the release given in this case was in good faith.

6. ¶Mortensen further maintains that the jury was entitled to apportion fault to the settling third party joint tortfeasors even though those third parties were judgment-proof and released from liability by Cusenbary. This, however, is contrary to the law in Montana regarding apportionment of negligence among tortfeasors that controlled this case. In *Newville v. State Department of Family Services* (1994), 267 Mont. 237, 247-49, 883 P.2d 793, 799-800, we noted that the 1987 amendments to § 27-1-703, MCA (1981), were designed to apportion responsibility for a person's damages among all those who might have contributed as a cause of those damages in order that those defendants named by a plaintiff could avoid paying a judgment disproportionate to their respective degree of fault. We ultimately struck down the critical language in the 1987 amendments on due process grounds, concluding that the legislation lacked sufficient procedural safeguards to insure a fair apportionment of negligence to plaintiffs and unrepresented nonparties. *See Newville*, 267 Mont. at 252, 883 P.2d at 802.

7. ¶In response to *Newville*, the 1995 Legislature again amended § 27-1-703, MCA, reviving the nonparty defense which had been found unconstitutional, and inserting procedural requirements which had not been present in the 1987 version of the statute. In *Plumb v. Fourth Judicial District* (1996), 279 Mont. 363, 927 P.2d 1011, we addressed the 1995 amendments and noted that the legislation still lacked a mechanism for unnamed third parties to appear and defend themselves. We observed that pursuant to the statute it would be entirely possible that the negligence apportioned to an unrepresented party who had not appeared to defend himself or herself, would not be an accurate reflection of the true degree of that person's fault. *See Plumb,* 279 Mont. at 377-78, 927 P.2d at 1019-20.

1. ¶Mortensen contends that *Plumb* does not control the facts of this case. Mortensen argues that he filed a third party action against the Wells who were thus put on notice with an opportunity to defend themselves and hire counsel. Even though the defendants did not appear and their default was taken, Mortensen argues that this is an entirely different situation than *Plumb* in which the party was unnamed either as a defendant or third party defendant.

2. ¶An examination of Mortensen's third party complaint discloses that he was seeking contribution and indemnity from the Wells defendants. Once Cusenbary settled with these defendants, Mortensen's third party claim for contribution was extinguished. *See Deere*, 224 Mont. at 396-97, 730 P.2d at 404-05. At that point in time the same due process concerns we noted in *Newville* and *Plumb* appeared. There is no mechanism provided in § 27-1-703, MCA (1995), by which the negligence of nonparties, including third party defendants released from liability, can be fairly apportioned by a jury.

3. ¶Mortensen points out that in *Whiting v. State* (1991), 248 Mont. 207, 810 P.2d 1177, the state was allowed to apportion negligence against a defendant who had previously settled with the plaintiff. Our review of *Whiting*, however, discloses that the issue of apportionment was never raised by the plaintiff, at least on appeal. In *Whiting*, the state argued that it should not be responsible for all the damages when the jury found that it was only 58 percent negligent. In that case we held that § 27-1-703, MCA (1987), still retained joint and several liability as to defendants found more than 50 percent responsible for the plaintiff's injuries.

4. ¶Accordingly, we conclude that the District Court properly refused to permit the jury to apportion negligence to third party defendants who were released from liability by Cusenbary and who were impecunious and judgment-proof.

5. ¶We affirm the jury's verdict and the judgment of the District Court.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice W. William Leaphart, dissenting.

1. ¶I concur with the resolution of issue four and dissent from issues one, two and three.
2. ¶In issue one, the Court concludes that the District Court did not abuse its discretion when it denied Mortensen's proposed jury instruction on intervening, superseding cause. In reaching that conclusion, the Court reasons that:

The consequences of serving alcohol to a person who is visibly intoxicated are reasonably foreseeable precisely because of the causal relationship between serving alcohol and drunken conduct. Wells' drunken conduct was not freakish, bizarre, or unpredictable as Mortensen asserts. Rather, drunken conduct is the expected, predictable, and therefore reasonably foreseeable outcome of serving alcohol to a person who is already intoxicated.

1. ¶In concluding that all "drunken conduct" is the reasonably foreseeable result of serving alcohol, the Court casts with too broad a net. Under the Court's reasoning, absolutely anything that Wells did after Mortensen served him would constitute "drunken conduct" and thus be foreseeable. If he had traveled in his wheelchair down the street and robbed the local convenience store in order to obtain more alcohol, that too would be drunken conduct, but could Mortensen have reasonably foreseen this conduct? I doubt it.

2. ¶At best it can be argued that if one serves alcohol to an already intoxicated person, it is foreseeable that you will further impair that person's senses and coordination, thus increasing the likelihood that he/she will engage in negligent conduct that results in an accident. When, however, the intoxicated person engages in intentional, criminal conduct, the foreseeability is greatly attenuated.

3. ¶It may be that a jury would determine that Wells' intentional act of driving through the wall of the tavern was foreseeable. However, given that Wells was brought into the tavern in a wheelchair and that, later, two of his companions had to lift him back into the wheelchair to wheel him out of the tavern where he was then placed in the car by his niece, reasonable minds could certainly disagree as to whether it would be foreseeable that he would then drive a car through the tavern wall. In *Estate of Strever*, we "emphasize[d] that a cause of action involving superseding intervening acts, whether criminal or non-criminal, normally involves questions of fact which are more properly left to the finder of fact for resolution." *Estate of Strever*, 278 Mont. at 178, 924 P.2d at 673-74. Rather than establish a precedent that all drunken conduct is foreseeable as a matter of law, I would reverse the District Court's refusal of the jury instruction on intervening, superseding cause and submit the issue to the jury.

4. ¶I also dissent from the Court's resolution of issue two. I would reverse the District Court's exclusion of evidence of the criminal proceedings against James Wells. As a result of the incident at the Town Tavern, Wells was arrested and charged with four felony counts, including two counts of criminal endangerment, § 45-5-207, MCA, which requires a showing that he knowingly engaged in specific conduct, and felony criminal mischief, § 45-6-101, MCA, which requires knowing and purposeful conduct. Wells pled guilty to all four counts thereby admitting that he had acted intentionally and purposefully when he drove through the tavern wall.

5. ¶Mortensen argues that Wells' convictions should have been admissible to prove that Wells' conduct was intentional, criminal and therefore not foreseeable since one normally has less reason to anticipate acts that are " 'malicious and intentionally damaging,' " especially when " 'such acts are criminal.' " *Estate of Strever*, 278

Mont. at 176, 924 P.2d at 672 (citation omitted). The Court skirts this rule by noting that in *Estate of Strever* we stated that the rule applies " 'in the absence of any reason to expect the contrary . . . .' " *Estate of Strever*, 278 Mont. at 176-77, 924 P.2d at 673 (citation omitted). The Court reasons that Mortensen, as the server of the alcohol, had every reason to "expect the contrary," that Wells would engage in *drunken conduct*; that under the dram shop act, it is foreseeable as a matter of law that an intoxicated tavern patron may drive a vehicle while intoxicated and that an injury-producing accident may result. The Court states: "The question, however, is not whether Wells' conduct was criminal and intentional, but whether it was foreseeable." That begs the question. The intentional and criminal nature of Wells' conduct goes to the question of whether Wells' conduct could reasonably be foreseen. As it did in resolving the first issue, the Court reasons that all drunken conduct of tavern patrons is reasonably foreseeable. Again, I disagree with that broad proposition. Furthermore, I do not see any basis for concluding that the dram shop act stands for that proposition. As the majority points out, under the dram shop act, a tavern owner must reasonably foresee that an intoxicated patron may drive a vehicle and that an injury producing "accident" may result. Whether Wells acted intentionally is relevant to the question of whether the incident was an accident. Mortensen should not have been precluded from introducing evidence that this was no "accident" and that it was the result of Wells' intentional, criminal conduct which Wells admitted to when he pled guilty to the felony criminal charges.

6. ¶I would reverse the District Court and allow the introduction of the criminal convictions for the jury to consider in determining whether or not Wells' conduct was an intervening, superseding cause.

7. ¶Finally, as to issue three, Mortensen contended that the test results of Wells' blood alcohol content taken by the hospital shortly after the incident were not admissible because the standard for civil liability pursuant to § 27-1-710, MCA, is "visible intoxication," rather than "legal intoxication." The District Court agreed and granted his motion *in limine* excluding evidence of the BAC results. Having concluded that actual blood alcohol content was not admissible, the District Court resorted to legerdemain and allowed Cusenbary's expert to testify as to a *hypothetical* blood alcohol content and what that signified in terms of visible signs of intoxication. This ruling truly befuddles me. Either blood alcohol content is relevant or it is not. If it is, then actual, not hypothetical, blood alcohol content is more probative. I agree that blood alcohol content in any form was not relevant to the question of whether Wells was visibly intoxicated. That question should have been resolved with testimony from those who saw Wells in the tavern. The expert testimony as to Wells'

hypothetical blood alcohol content should have been excluded. I would reverse the District Court on that issue.

8. ¶In conclusion, under issue four I concur that the District Court properly dismissed Mortensen's third party complaint. However, I would reverse and remand for a new trial on the remaining issues.

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray joins in the foregoing dissenting opinion of Justice W. William Leaphart.

/S/ KARLA M. GRAY