**MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Charles B. HUNT; Connie Hunt; Jeffrey Miller; Freda Miller; Robert Vergara; Barbara Vergara; De De Lawson, as Guardian of Taylor Lawson; Duane Hergenrider; Dena Hergenrider; Larry Skorupa; and Elanna M. Skorupa, Defendants.**

**and**

**Duane Hergenrider and Dena Hergenrider and Larry Skorupa and Elanna M. Skorupa, Plaintiffs/Cross–Claimants,**

v.

**Charles B. Hunt; Connie Hunt; Jeffrey Miller; Freda Miller; Robert Vergara; Barbara Vergara; De De Lawson, as Guardian for Taylor Lawson, Defendants/Cross–Defendants.**

**No. 99–CV–123–J.**

United States District Court,
D. Wyoming.

Feb. 7, 2000.

Laurence William Stinson, Bormuth & Freeman, Cody, WY, for Mountain West Farm Bureau.

John O. Worth, Worth Law Office, Rushville, IN, for Charles B. Hunt, Connie Hunt, De De Lawson.

Jeffrey J. Gonda, Lonabaugh & Riggs, Sheridan, WY, T. Thomas Singer, Moulton Bellingham Longo & Mather, Billings, MT, Alvin L. Wiederspahn, Wiederspahn Lummis & Liepas, Cheyenne, WY, for Jeffrey Miller, Freda Miller.

Patrick J. Murphy, Scott W. Skavdahl, Williams Porter Day & Neville, Casper, WY, Bradley D. Bonner, Bradley D. Bon-

ner PC, Powell, WY, for Robert Vergara, Barbara Vergara.

Brent R. Kunz, Hathaway Speight & Kunz, Cheyenne, WY, Kenneth D. Peterson, Peterson & Schofield, Billings, MT, for Duane Hergenrider, Dena Hergenrider, Larry Skorupa, Elanna M. Skorupa, Zachary J. Blood.

## ORDER GRANTING MOTION TO DISMISS CROSS–CLAIMS PURSUANT TO RULE 12(b)(6)

ALAN B. JOHNSON, Chief Judge.

The Motion to Dismiss Cross-claims Pursuant to Rule 12(b)(6) filed by Cross–Defendants Charles B. Hunt, Connie Hunt, Jeffrey Miller, Freda Miller, Robert Vergara, Barbara Vergara, and De De Lawson, as Guardian of Taylor Lawson (hereafter "Cross–Defendants"), the response in opposition thereto filed by Defendants–Cross–claimants Duane Hergenrider and Dena Hergenrider and Larry Skorupa and Elanna M. Skorupa (hereafter "Cross–Claimants"), and the Cross–Defendants' further reply thereto came before the Court for consideration, having been submitted to the Court upon the parties' written briefs. The Court, having reviewed the parties' written submissions, the pleadings of record, the applicable law, and being fully advised in the premises, FINDS that the Cross–Defendants' Motion to Dismiss Cross-claims should be GRANTED for the reasons to be stated below.

### Background

This action was originally filed as an interpleader action by Mountain West Farm Bureau Mutual Insurance Company. The parties have stipulated to dismissal with prejudice of the plaintiff insurer, Mountain West Farm Bureau, and the remaining parties have been realigned.

The case arises out of a two-car head-on collision that occurred February 12, 1999, north of Bridger, Carbon County, Montana. One of the vehicles was owned by Max Juarez, and at the time of the accident, that vehicle was being driven by his son, Jose Juarez, traveling northbound on U.S. Highway 310. The other vehicle in the accident was being driven by Danyel Blood, traveling southbound on U.S. Highway 310. The Juarez vehicle attempted to pass a semi-tractor trailer when it collided head-on with the vehicle driven by Danyel Blood.

The cross-claim defendants were passengers in the vehicle driven by Jose Juarez, including Michael David Miller, Andrew Robert Vergara, and Adam D. Hunt. All four of the individuals in the Juarez vehicle died as a result of the accident. Danyel Blood and her husband, Zachary Blood, also died in the accident. The Bloods had no surviving children.

In their claims against the cross-defendants, cross-claimants have asserted the following:

A. INCIDENT: On or about 12 February 1999 the Cross defendants were companions and associates of Jose Juarez. They knew or should have known that Jose Juarez was intoxicated and they contributed to or fostered the driving of the vehicle by Jose Juarz [sic] and made no attempts to deter an obviously intoxicated driver from entering upon the highways of the States of Wyoming and Montana and driving in such a manner as to cause the deaths of six persons. The actions of the driver contributed to and fostered by the passengers resulted in the death of six persons in a collision on 12 February 1999 approximately 2.5 miles north of Bridger, Carbon County, Montana.

B. DUTY: The passengers Hunt, Miller and Vergara had the affirmative duty to persuade and prevent Jose Juarez from operating a motor vehicle on the highways of Wyoming and Montana while he was in an intoxicated state. They breached that duty.

C. CAUSATION: The breach of duty by each of the passengers, Hunt, Miller and Vergara was a substantial cause of the collision and the wrongful deaths of Zachary and Danyel Blood.

D. DAMAGES: That as a result of the negligence of the Cross defendants jointly and severally, the persons Danyel Blood and Zachary Blood lost their lives and said Cross defendants should be liable for damages that arise out of their wrongful deaths and which will be proved at trial.

Docket Entry No. 27 at page 4.

The cross-defendants have all filed motions to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), seeking an order dismissing the claims asserted by the cross-claimants against them, alleging the negligence of the passenger in the vehicle driven by Jose Juarez on the night of the accident.

### Standard for Motions to Dismiss Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) may be granted only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. *Cottrell, Ltd. v. Biotrol International, Inc.*, 191 F.3d 1248, 1251 (10th Cir.1999), quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir.), cert. denied, 522 U.S. 812, 118 S.Ct. 55, 139 L.Ed.2d 19 (1997). See also *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1261–1262 (10th Cir.1998); *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 896–897 (10th Cir.1997), citing and quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir.)(in turn quoting *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir.1996)), cert. denied, 522 U.S. 812, 118 S.Ct. 55, 139 L.Ed.2d 19 (1997).

### Discussion

The cross-defendants argue that, even accepting all of the cross-claim allegations as true, no claim for relief is stated against the passenger-defendants. Cross-defendants also contend that the correct parties have not brought the counterclaims in that pursuant to Wyo. Stat. § 1–38–101, a suit or claim against a person claimed to be liable, who has died, must be brought against the executor or administrator of his estate. It appears that this issue has been resolved by stipulation and that it is no longer in serious dispute. However, in the event that the Court's analysis as to the status of this issue is wrong, the following observations are offered.

Cross-defendants correctly characterize Wyo. Stat. § 1–38–101. That statute provides:

§ 1–38–101 Actions for wrongful death which survive; proceedings against executor or administrator of person liable.

Whenever the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured to maintain an action to recover damages if death had not ensued, the person who would have been liable if death had not ensued is liable in an action for damages, even though the death was caused under circumstances as amount in law to murder in the first or second degree or manslaughter. If the person liable dies, the action may be brought against the executor or administrator of his estate. If he left no estate within the state of Wyoming, the court may appoint an administrator upon application.

Further, Wyo. Stat. § 1–38–102, entitled "Action to be brought by personal representative; recovery exempt from debts; measure and element of damages; limitation of action" provides:

(a) Every such action shall be brought by and in the name of the personal representative of the deceased person.

(b) If the deceased left a husband, wife, child, father or mother, no debt of the deceased may be satisfied out of the proceeds of any judgment obtained in any action brought under the provisions of this section.

(c) The court or jury, as the case may be, in every such action may award such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person for whose benefit such action is

brought may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

(d) Every such action shall be commenced within two (2) years after the death of the deceased person.

The Wyoming Supreme Court, construing the Wrongful Death Act, has stated:

The statute [§ 1–38–102] requires every wrongful death action to be brought by and in the name of the decedent's personal representative, i.e., the executor or administrator of the decedent's estate. [footnote omitted]. Wyo. Stat. § 1–38–102(a)(1997). Only a personal representative, appointed by the court, may bring an action for wrongful death....

Corkill v. Knowles, 955 P.2d 438, 443–444 (Wyo.1998) (citations and footnote omitted).

A brief review of the court file suggests that the parties' stipulation regarding proper parties has been implemented and that the personal representatives of the estates of each of the decedents involved in this tragic accident are now parties to this litigation. The Court declines to grant the defendant's motion to dismiss on the basis that suit has not been brought against and by the proper parties, the executors or administrator's of the passengers' estates.

■ The more substantive dispositive issue in this case concerns the duty owed by a passenger in a vehicle to third parties. Under the law of Wyoming, the forum state in this case, it is established that the law of the place where the tort or wrong was committed is the law that shall govern and be applied in the substantive phases of any tort action. *Duke v. Housen,* 589 P.2d 334, 342 (Wyo.1979). Thus, the law of Montana should be applied to determine the duty owed by a passenger in a vehicle to third parties.

Montana has not squarely addressed this issue. Under Montana law, as in other states, to establish a negligence claim, a party is required to prove the existence of a duty, breach of duty, causation, and damages. *Jackson v. State of Montana,* 287 Mont. 473, 956 P.2d 35, 42 (1998). The presence of a legal duty is an essential element of a negligence-based claim. *Id.;* see also *Cusenbary v. Mortensen,* 987 P.2d 351, 355 (Mont.1999). If a plaintiff fails to establish any one element, the negligence claim fails. *Cusenbary v. Mortensen,* 987 P.2d at 355. Further, the court must determine as a matter of law whether a legal duty was owed by the cross-defendants to the cross-claimants. *Estate of Strever v. Cline,* 278 Mont. 165, 924 P.2d 666, 669 (1996).

■ To state a claim against the defendant-passengers, the complaint must allege facts sufficient to show the passengers encouraged Jose Juarez' actions and gave him substantial assistance in committing the tort which resulted in the cross-claimants' injury. *Sloan v. Fauque,* 239 Mont. 383, 784 P.2d 895, 896–97 (1989). Here, the cross-claimants' allegations, which are set out in the preceding portions of this Order, do not set forth any factual allegations from which it could reasonably be inferred that the passengers in the Juarez vehicle either encouraged the actions of Jose Juarez or gave him substantial assistance in committing the alleged tort.

This disposition is in accord with the majority of courts that have considered this issue. Most courts hold that, absent ownership or other legal control over the vehicle or a special relationship with the driver, a passenger in a vehicle operated by an intoxicated driver owes no legal duty to third parties to control, stop or prevent the driver from operating the vehicle, even if he is aware that the driver is intoxicated.

Numerous examples are available to demonstrate this principle. The Kansas Supreme Court stated in *Akins v. Hamblin,* 237 Kan. 742, 703 P.2d 771 (1985):

Kansas courts have recognized that a passenger owes a duty to exercise that care which a reasonably careful person would use for his own protection under the existing circumstances. *McGlothlin*

*v. Wiles,* 207 Kan. 718, Syl. ¶ 1, 487 P.2d 533 (1971). It has never been recognized in Kansas that a passenger owes any duty to other passengers or third parties unless the passenger and driver were involved in a joint enterprise or the passenger and driver had a special relationship which created some duty. This is the general rule followed in almost all jurisdictions.

*Akins v. Hamblin,* 703 P.2d at 773.

Other courts are in accord. See e.g., *Lombardo v. Hoag,* 269 N.J.Super. 36, 634 A.2d 550, 559 (1993)("the negligence of the operator of an automobile is not chargeable to a passenger who has no control over the car"); *Dennison v. Klotz,* 12 Conn.App. 570, 532 A.2d 1311 (1987)("we hold that in the absence of an allegation of facts showing a special relationship between the parties or between the defendant and the driver, or in the absence of an allegation of facts showing that the driver and the defendant were engaged in a joint enterprise, in action by a defendant passenger does not give rise to liability to a fellow passenger or other third party injured by the driver's conduct."); *Olson v. Ische,* 343 N.W.2d 284 (Minn.1984)("passenger has no duty to members of the public to control the operation of a motor vehicle by its intoxicated owner, where, ... there is no special relationship between the driver-owner and the passenger"); *Fugate v. Galvin,* 84 Ill.App.3d 573, 40 Ill.Dec. 318, 406 N.E.2d 19 (1980); *Stock v. Fife,* 13 Mass.App.Ct. 75, 430 N.E.2d 845 (1982); *Welc v. Porter,* 450 Pa.Super. 112, 675 A.2d 334 (1996)(minor passenger in a vehicle did not owe duty to third person or other passengers to protect from negligent acts of the driver, absent existence of a special relationship, joint enterprise, joint venture or right to control the vehicle). The clear weight of authority compels the conclusion that the passengers in Juan Juarez' vehicle did not owe a duty to third persons.

█ The Court has reviewed the Montana cases relied upon by cross-claimants in their brief in opposition and finds that none of this authority supports their contention that the passengers in the vehicle driven by Juan Juarez owed a legal duty to third persons, including cross-claimants. *Estate of Strever v. Cline,* 278 Mont. 165, 924 P.2d 666 (1996) is not helpful, in that the court there held that the owner of a firearm has a duty to the general public to use and store a firearm in a safe and prudent manner, taking into consideration the type of firearm, whether it is loaded or unloaded, whether the ammunition is in close proximity or easily attainable, and the location and circumstances of its use and storage. 924 P.2d at 67. In that case, four teenagers had stolen property from an unlocked truck owned by the defendant Cline, including a loaded Ruger 22–caliber semiautomatic pistol. After they stole the pistol, one of the boys was waving the pistol when it went off, killing one of the other boys. The mother of the boy who was killed brought a wrongful death action against Cline, claiming he was negligent in storing the loaded gun in his unlocked pickup. In determining that a duty of care existed, the court stated:

> The existence of a duty of care depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against the imposition of liability.... The policy considerations to be weighed in determining whether to impose a duty include: (1) the moral blame attached to the defendant's conduct; (2) the desire to prevent future harm; (3) the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (4) the availability, cost and prevalence of insurance for the risk involved....
>
> *        *        *        *        *        *
>
> ... [D]uty "is measured by the scope of the risk which negligent conduct foreseeability entails."

924 P.2d at 670 (citations omitted).

*Cline* is not helpful because it is factually dissimilar to this case. Here, the acts of

the driver, Jose Juarez, and the vehicle belonging to his father was used to engage in the conduct that is alleged to have caused the cross-claimants' injuries. The passengers did not provide the vehicle driven by Jose Juarez and did not have a special relationship with him that might give rise to a legal duty.

Cross-claimants also rely on *Cusenbary v. Mortensen,* 987 P.2d 351 (Mont.1999), to argue that Montana law imposes a duty on the passenger defendants in this case. *Cusenbary* is a case involving the liability of a tavern owner for the conduct of a visibly intoxicated patron who drove a vehicle into the tavern through the wall, injuring the plaintiff in that case. The case involved review by the Montana court of the dramshop act, which established liability for tavern owners for foreseeable injury-producing accidents of a patron if the tavern owner provided alcohol to a visibly intoxicated patron. The court found that the conduct of the tavern owner, serving alcohol to the intoxicated patron, was the very act causing the conduct resulting in injury to the plaintiff. The:

> [c]onsequences of serving alcohol to a person who is visibly intoxicated are reasonably foreseeable precisely because of the causal relationship between serving alcohol and drunken conduct. Wells' drunken conduct was not freakish, bizarre, or unpredictable as Mortensen asserts. Rather, drunken conduct is the expected, predictable, and therefore reasonably foreseeable outcome of serving alcohol to a person who is already intoxicated.

987 P.2d at 355. The case did not involve discussion of the duty owed to third persons by a passenger in a vehicle that is driven by another.

■ The Court believes that Montana courts would, in all likelihood, follow the majority position and hold that there is no duty owed by a passenger to third parties. Policy reasons that support this conclusion are discussed in *Dennison v. Klotz,* 12 Conn.App. 570, 532 A.2d 1311. In that case, the Connecticut appellate court stated:

> The reason for distinguishing between passenger conduct which may affect recovery by the plaintiff passenger, and passenger conduct sought to be used as a basis for liability to other persons, has been variously stated. In *Olson v. Ische,* supra, at 287, the Supreme Court of Minnesota explained: "A passenger has, of course, a legal duty to use care for his own safety, and his contributory negligence will bar or diminish his own claim. He may also have a moral duty owed to others not to encourage the driver to drive when he should not be driving. But to impose a legal duty on the passenger, which makes him liable to others on the highway for what the driver himself chooses to do, seems to us, as a general proposition, inappropriate. Such a rule assumes, incorrectly, that a passenger somehow shares in the management of the motor vehicle, and it further assumes the driver is amenable to the passenger's influence." Likewise, in distinguishing between these two rules of law, the Supreme Court of Wisconsin reasons: "A person may well be content to trust his own safety to a driver, and yet not be willing to indemnify third persons who may suffer through his negligence. He may say, so far as I am concerned his negligence is my negligence, but I do not agree to become responsible to others for his negligence. To extend the doctrine to that degree would make a guest in a private conveyance an insurer of third persons against the negligence of the driver. Instead of being invested with the liabilities of a guest he would shoulder those of a master." *Reiter v. Grober,* supra, 173 Wis. at 495, 181 N.W. 739.
>
> For a more practical reason, also, we are hesitant to impose liability under the circumstances of this case. If liability to an injured third party attached to the inaction of a passenger, we perceive no justifiable reason not to extend similar

liability to third parties, such as witnesses or bystanders, who were or should have been aware of the danger posed by the driver's conduct but failed to take some preventive action. See *Martinson v. Cagle*, [454 So.2d 1383]supra; (noting that any observer who knew the driver was intoxicated was in the same position as a passenger having no legal duty to take preventive action). 532 A.2d at 1316–1317.

The *Ische* court, quoted in the above excerpt, stated further:

... For Fritz to join Ische in the car ride as he did here may be encouragement of a sort, but not the kind that creates legal liability. Significantly, plaintiffs do not claim Fritz had an affirmative duty to dissuade Ische from driving; the efforts of Ische's brother in this regard were to no avail. Nor do plaintiffs claim Fritz had a duty to physically restrain Ische, a duty that could make a bad situation worse. And although plaintiffs prefer to limit their proposed duty to intoxicated drivers, the problem nevertheless arises regarding what should be the passenger's duty to control a driver who is only inattentive or otherwise driving negligently....

Section 315 of the Restatement (Second) of Torts (1965), cited by plaintiff-appellants, provides that there is no duty to control the conduct of a third person to prevent him from causing harm to another unless a "special relation" exists between the actor and the third person. Examples of this "special relation" as given in the Restatement are parent-child, master-servant, land possessor, and custodian of a person with dangerous propensities. Other examples given are carrier-passenger, innkeeper-guest, landowner-invitee, and certain custodianships. As respondent Fritz points out, the relationship of driver-owner and passenger is not listed, nor do we believe it should be included under the facts here.

\*      \*      \*      \*      \*      \*

A passenger who interferes with his driver's operation of the motor vehicle, for instance by grabbing the steering wheel, may be liable to others, and a passenger who is the owner of the car may be liable, at common law, for negligent entrustment to an incompetent driver. This case, however, is different. We hold that a passenger has no duty to members of the public to control the operation of a motor vehicle by its intoxicated owner, where, as under the circumstances here, there is no special relationship between the driver-owner and the passenger....

343 N.W.2d at 287–288 (citations omitted).

The Court finds the above analyses persuasive and adopts the reasoning set out in those excerpts as its own. The Court finds that in this case the passengers did not owe a legal duty, as has been alleged by the cross-claimants.

■ The Court also finds that the cross-claimants have failed to plead a joint enterprise theory that withstands scrutiny. The Montana court in *Bahm v. Dormanen*, 168 Mont. 408, 543 P.2d 379 (1975), stated that elements of joint venture include a community of pecuniary interest as well as joint control of the vehicle. There is no indication that any of these passengers had exclusive or superior control over the vehicle driven by Jose Juarez or that any of them had any pecuniary motivation for the trip.

Other jurisdictions have considered and rejected similar joint enterprise arguments, which do not require a business relationship as is needed for a joint venture.

What is required for a joint enterprise is: "(1) a mutual understanding for a common purpose, and (2) a right to a voice in the direction and control of the means used to carry out the common purpose."

*Olson v. Ische*, 343 N.W.2d at 288. That court noted that the passenger in that case had no legal right to exercise control over

the operation of the vehicle. It quoted *Burdick v. Bongard*, 256 Minn. 24, 32, 96 N.W.2d 868, 874 (1959): " 'Realistically speaking, the joint enterprise concept is seldom applicable to the passenger and driver relationship.' " It further rejected arguments based upon Restatement (Second) of Torts § 876 (1977). It set out the relevant section of the Restatement and stated:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if be
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encourage to the other so to conduct himself, * * * ....

Amicus maintains that both subdivisions (a) and (b) apply to the facts of this case, because defendants Fritz' willingness to drink and ride with Ische substantially encouraged Ische's conduct. Further, they assert that venturing out on the highway in a drunken state constituted a tortious act committed in concert by the two men.

\* \* \* \* \* \*

Here there is not the kind of situation where it can be said the driver and passenger were acting "in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result." Restatement (Second) of Torts § 876, comment (a) (1977). Nor is there the kind of "substantial encouragement" by the passenger of the driver's conduct needed to impose joint tort liability. Fritz was with Ische, partying with others, each doing his own drinking voluntarily, and Fritz voluntarily accompanied Ische on his return trip to Norwood in a guest-host driving situation. We hold that, as matter of law, plaintiff-appellants do not have a cause of action against defendant Fritz under section 876 of the Restatement (Second) of Torts.

343 N.W.2d at 289. See also *Welc v. Porter*, 675 A.2d at 338–339 (discussing Restatement (Second) of Torts § 876) ("To establish that the driver and passenger acted in concert, it must be shown that they acted in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result.... As previously discussed, appellants alleged that appellee and Porter voluntarily drank beer and that Porter drove his mother's truck in a negligent manner. These facts do not present the type of situation where it can be said that the driver and passenger acted in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result.") The Court does not accept cross-claimants' argument that a legal duty is established by the moral proposition that "friends do not let friends drive drunk and friends must get the keys from a friend who attempts to drive drunk."

The Court also finds that cross-claimants' claim pursuant to Mont.Code Ann. § 16–6–311 fails. The cross-claimants have argued that the passengers were occupants of houses where they partied that evening and that their vehicle could be construed under the statute as a "premises." This statute is part of a scheme imposing criminal liability for the sale of alcohol under certain specific circumstances. Mont.Code Ann. § 16–6–311 provides:

> 16–6–311. Occupant of premises deemed party to offense
>
> Upon proof of the fact that an offense against this code has been committed by any person in the employ of the occupant of any house, shop, room, or other premises in which the offense is committed or by any person who is suffered by the occupant to be or remain in or upon such house, shop, room, or premises or to act in any way for the occupant, the occupant shall prima facie be deemed to be a party to the offense so committed and shall be liable to the penalties pre-

scribed for the offense as a principal offender, notwithstanding the fact that the offense was committed by a person who is not proved to have committed it under or by the direction of the occupant. Nothing in this section shall relieve the person actually committing the offense from liability therefor.

There is nothing to indicate that a vehicle is within the meaning of "premises" as contemplated by this criminal statute. The Court finds it has no application in this case.

Likewise, Mont.Code Ann. § 27–1–710 is not applicable in this case. This statute imposes certain legal duties upon tavern owners, who are liable for the foreseeable injury-producing accidents of a patron if the tavern owner provided alcohol to a visibly intoxicated patron. Nothing in the record suggests that this statute has any application whatsoever in this case and the Court finds it does not provide any basis for liability of the passengers in the Juarez vehicle.

The Court concludes that the cross-claimants have failed to allege sufficient facts to support their claim that the passengers in the vehicle driven by Jose Juarez owed a legal duty in the circumstances of this case. Accordingly, and for the foregoing reasons, the Court finds that the defendants' Motions to Dismiss should be GRANTED. It is therefore

**ORDERED** that the Joint Motion to Dismiss Pursuant to Rule 12(b)(6) by cross-defendants Charles B. Hunt, Connie Hunt, Jeffrey Miller, Freda Miller, Robert Vergara, Barbara Vergara and De De Lawson, as Guardian of Taylor Lawson, and each of the individual motions to dismiss filed by the cross-defendants, seeking to dismiss the cross-claims asserted by Hergenrider and Skorupa, shall be, and are, **GRANTED.**